Argued October 6, 1976, affirmed March 3, 1977

COLLINS et ux, *Respondents,*
*v.*
FITZWATER, *Appellant.*
(No. 77951, SC 24273)

560 P2d 1074

G. Kenneth Shiroishi, Portland, argued the cause for appellant. With him on the briefs were Thomas E. Cooney and Morrison, Dunn, Cohen, Miller & Carney, Portland.

James W. Korth, Eugene, argued the cause for respondents. On the brief were Arthur C. Johnson and John B. Arnold, of Johnson, Harrang & Mercer, Eugene.

Before Denecke, Chief Justice, and McAllister,* Holman, Howell and Bryson, Justices.

Affirmed.

---

*Retired December 31, 1976.

**HOWELL, J.**

This is a legal malpractice action brought to recover damages suffered by Dr. Richard B. Parker when he was held liable under ORS Chapter 59, the Blue Sky Law, to purchasers of unregistered securities issued by a corporation of which he was a director. Plaintiffs represent the purchasers of the securities and seek recovery as assignees of Dr. Parker. The defendant, W. Dean Fitzwater, was attorney for the issuing corporation. The action was tried before the court without a jury, and a judgment entered for plaintiffs.

The facts are not in dispute.

Dr. Parker attended a meeting of the board of directors of Enz-a-Bac, Inc., on September 5, 1968, as a scientific consultant. At the meeting he was elected to the board of directors, on which defendant also served. Later in the same meeting the board approved a financing plan that involved the issuance of interest-bearing promissory notes which also contained an option for conversion into capital stock. After the proposal was adopted, the defendant, as corporate attorney, drafted a promissory note form with the provisions outlined above and most, but not all, of the notes were thereafter issued over defendant's signature.

When the corporation later became insolvent, the purchasers of the notes brought individual actions under ORS Chapter 59 against the corporation and its directors, including Parker and the defendant. It was determined that the notes were securities which had been sold without registration and that, under the provisions of ORS 59.115(3), the directors were jointly and severally liable for damages to the purchasers. Thereafter, individual judgments totaling $60,759.08 were entered against Parker, the defendant, and other directors.

In an effort to avoid bankruptcy proceedings, Parker's attorney negotiated covenants not to execute

with each of the judgment creditors. In exchange for these covenants, Parker assigned all causes of action he had against the defendant to plaintiffs as representatives of those judgment creditors,[1] and he also agreed to execute a note for $3,500.

Thereafter, plaintiffs filed this action for legal malpractice against defendant for Parker's damages.[2] The trial court found that defendant, as corporate attorney, was negligent in failing to determine whether the securities issued were required to be registered and in failing to advise the members of the board of directors that they could incur liability if unregistered securities were sold. The court then concluded that plaintiffs' assignment from Parker was valid and entitled them to a judgment against the defendant for $64,959.08.[3]

On appeal, defendant makes three assignments of error. First, he contends that plaintiffs' complaint failed to state a cause of action for indemnity because plaintiffs did not allege facts sufficient to establish that Parker's own conduct was not a bar to his recovery and that the complaint failed to state a cause of action for legal malpractice in that plaintiffs did not allege facts sufficient to establish the element of causation. Second, he argues that the trial court erred in concluding that plaintiffs' assignment from Parker was not void as against public policy. Finally, defendant contends that, in any event, the court erred in awarding damages in excess of $3,500, the amount of

---

[1] Apparently plaintiffs and the other judgment creditors have agreed to share the proceeds of this litigation.

[2] Defendant's carrier then brought an action against him for a declaratory judgment that its policy did not cover this claim, but in a previous decision this court held against the carrier on this issue. *Oregon Auto. Ins. Co. v. Fitzwater,* 271 Or 249, 531 P2d 894 (1975).

[3] The judgment of $64,959.08 reflects not only Parker's liability on the outstanding Blue Sky Law judgments, $60,757.08, but also an additional $2,900 for Parker's legal expenses in the Blue Sky Law cases and $1,300 for Parker's expenses in settling with other claimants who were not involved in this litigation.

the note issued in exchange for the covenants not to execute.

We believe that plaintiffs' complaint adequately sets forth a cause of action for legal malpractice. Defendant's brief admits that plaintiffs "have pled a cause of action in tort, and that their right of indemnity does not bar them from seeking other damages from defendant's tortious acts." However, defendant contends that the essence of plaintiffs' theory of recovery is one of indemnity and that the mere fact that plaintiffs chose to seek their recovery in tort "does not change the substance or character of their remedy."

■ We fail to see the relevance of this argument. Whether plaintiffs' theory is characterized as one for negligent malpractice or one for indemnity, we believe that the complaint clearly sets forth sufficient facts to constitute a cause of action. The complaint alleges, in part, that:

"At all times material herein Defendant W. Dean Fitzwater was employed by Enz-a-Bac, Inc. as its attorney and advised the corporation, its management, and the members of its Board of Directors as their legal counsel in corporate matters.

"* * * * *

"Defendant W. Dean Fitzwater was negligent in representing the corporation and advising it and the members of its Board of Directors, including Richard B. Parker, in one or more of the following:

"(1) In approving the proposal to raise money by issuing promissory notes which were securities within the terms of the Oregon Blue Sky Law, Chapter 59 ORS, which securities were not registered and were not exempt from the provisions of Chapter 59 ORS.

"(2) In failing to advise the corporation and the members of the Board of Directors that they would incur legal liability if such securities without being registered were sold or exchanged for money.

"(3) In failing to see that the securities were properly registered before they were issued or sold by the corporation or by its agents or employees.

[ 405 ]

"As a direct, proximate result of the negligence of Defendant in one or more of the particulars alleged, Richard B. Parker sustained the damage alleged hereinabove."

■ When considering challenges to the sufficiency of the allegations of a complaint which are raised for the first time on appeal, the complaint must be liberally construed in favor of the plaintiff. The allegations of the complaint are admitted as true, and plaintiffs are entitled to all reasonable inferences which could be drawn from those allegations. *See, e.g., Lincoln Loan v. State Hwy. Comm.,* 274 Or 49, 52, 545 P2d 105 (1976); *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 214, 493 P2d 138 (1972).

■■ As a member of the bar and attorney for the corporation, defendant had a legal duty to the corporation and to the other members of the board to determine whether the notes he drafted were subject to the provisions of ORS Chapter 59 and were required to be registered before sale. As a lay member of the board of directors, Parker was certainly entitled to rely upon defendant to see that the issuance of these notes complied with the applicable laws and would not expose him to individual liability. Although Parker, as a member of the board of directors, was chargeable under ORS 59.115(3) with knowledge that the notes were sold without registration, there is no evidence that Parker actually knew that registration was legally necessary. Liability under the statute

"is established by proof that the person knew the security was unregistered and *it is not necessary, in addition, to prove that the person knew that the law required the security to be registered. * * *.*" (Emphasis supplied.) *Spears v. Lawrence Sec. Inc.,* 239 Or 583, 587, 399 P2d 348 (1965) (construing the predecessor to ORS 59.115(3)). Accord, *Gonia v. E. I. Hagen Co.,* 251 Or 1, 7, 443 P2d 634 (1968).

In contrast to Parker, the defendant, as corporate attorney and the drafter of the notes in question, is chargeable not only with knowledge that the notes

were sold without registration but also with knowledge that the law required those notes to be registered as securities. The complaint alleges defendant's negligence and further alleges that this negligence resulted in Parker's liability to the purchasers of the notes. This is an adequate allegation of causation, for it can reasonably be inferred that Parker would not have approved the issuance of the notes without registration if he had been informed that registration was required and that a failure to register the notes could involve individual as well as corporate liability. So construed, we believe plaintiffs' complaint adequately sets forth a cause of action either for indemnity or for negligent malpractice. *See Black and Co. v. Nova-Tech, Inc.,* 333 F Supp 468, 471-72 (D Or 1971); *Fulton v. White Motor Corp., supra* at 210; *Ward v. Arnold,* 52 Wash 2d 581, 328 P2d 164, 166 (1958); *Modica v. Crist,* 129 Cal App 2d 144, 276 P2d 614, 615 (1954). *Cf. U.S. Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976).

Defendant's next contention is that Parker's cause of action was not assignable for reasons of public policy. Defendant admits that actions for legal malpractice are normally fully assignable, but he argues that the particular assignment in this case violates public policy and is, therefore, unenforceable. Apparently it is defendant's contention that, because Parker was found liable under ORS 59.115(3) in connection with the issuance of unregistered securities, he should not, as a matter of public policy, be permitted to shift his responsibility to the defendant, and plaintiffs should not be allowed to recover in his name.

■ Although ORS 59.115(3) specifically provides for contribution among those found jointly and severally liable under that statute, the statute is silent on the question of indemnity. Defendant argues that as a matter of public policy, indemnity should not be allowed under ORS 59.115 because the statute's deterrence function would be impaired if those found liable could shift the entire burden to another. However, in our view, there is no public policy which would

prohibit nonculpable directors who have incurred liability under ORS 59.115 from seeking indemnity from those actually responsible for the wrongful issuance of unregistered securities. The deterrence function of the Blue Sky Law is inoperable when the conduct involved is nonculpable, because nonculpable conduct cannot be deterred.

■ Moreover, ORS 57.255 specifically allows the indemnification of corporate officers at the expense of their corporation if they have "acted in good faith and in a manner [they] reasonably believed to be in or not opposed to the best interests of the corporation." If corporate directors may be indemnified at the expense of their own corporation for actions taken in good faith, we can discern no reason why they should not, as a matter of public policy, be allowed to seek indemnity from third parties under similar circumstances. *See* G. Washington & J. Bishop, Indemnifying the Corporate Executive 201-203 (1963); 3 Loss, Securities Regulation 1829-1836 (2d ed 1961); Ruder, *Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy,* In Pari Delicto, *Indemnification, and Contribution,* 120 Pa L Rev 597, 651-59 (1972). *Compare Gould v. American-Hawaiian Steamship Co.,* 387 F Supp 163, 166-68 (D Del 1974); *Globus v. Law Research Service, Inc.,* 418 F2d 1276, 1287-89 (2d Cir 1969), *cert denied* 397 US 913 (1970) (applying federal law), *with Black and Co. v. Nova-Tech, Inc., supra* at 471 (applying Oregon law).

■ As a matter of necessity, laymen who act as corporate directors must often rely upon the expertise and diligence of corporate counsel when intricate legal questions are at issue. When a corporate attorney errs in the performance of his legal duties, we can think of no reason why the layman rather than the attorney should bear the ultimate burden of the error. Therefore, we conclude that public policy does not prohibit a nonculpable director from seeking indemnification from a culpable corporate attorney through a suit for legal malpractice, or otherwise. Similarly, since

Parker had a valid claim against the defendant, we believe that plaintiffs' assignment gave them an enforceable right of action, and that that assignment is not void as against public policy.

Finally, defendant contends that the value of the assigned cause of action is limited to the amount of damages which Parker actually incurred, rather than the amounts for which he was liable at the time the assignment was made. Since the covenants not to execute, which were issued in exchange for the assignment, limited Parker's liability to $3,500 on the outstanding $60,759.08 in judgments, defendant argues that plaintiffs can recover only Parker's actual loss. Defendant relies upon *Stubblefield v. St. Paul Fire & Marine,* 267 Or 397, 517 P2d 262 (1973), in support of this position.

In *Stubblefield,* a doctor was sued for malpractice and his insurance carrier refused to defend. The plaintiff then entered into a covenant not to execute against the doctor in excess of $5,000 and, in return, the doctor assigned plaintiff his right of action against his insurance carrier for all additional amounts and agreed to confess judgment for $50,000. Thereafter, judgment for $50,000 was entered against the doctor, and plaintiff brought suit against the insurance carrier for wrongful failure to defend. This court noted that, under the terms of the insurance agreement, the company was liable to its insured only for such sums as "the Insured shall be *legally obligated to pay* as damages." 267 Or at 400. We concluded that the only amount that the doctor was "legally obligated" to pay was the $5,000 given in exchange for the covenant not to execute. This is because no judgment was entered against the doctor until *after* the execution of the covenant not to execute. Therefore, we held that the plaintiff acquired no enforceable rights under the assignment.[4]

---

[4] *But see Critz v. Farmers Ins. Group,* 230 Cal App 2d 788, 41 Cal Rptr 401, 12 ALR3d 1142 (1964).

*Stubblefield* is distinguishable from this case because, at the time this assignment was made, judgment had been entered against Parker, and he was then liable for the full amount of $60,759.08. Significantly, the importance of this very distinction was recognized in *Stubblefield* itself:

> "This is not an action against an insurance company by a person injured by the conduct of an insured person who has obtained a judgment against that person and has been unable to collect that judgment or has obtained an assignment from an insured person who is insolvent. See ORS 743.783. See also *Groce v. Fidelity General Insurance* * * * [252 Or 296, 448 P2d 554 (1969)]." 267 Or at 401.

In the *Groce* case, after a judgment for plaintiffs in excess of the policy limits, the insured assigned plaintiffs his right of action against his insurance carrier for wrongful failure to settle. In return, plaintiffs agreed not to enforce their judgments against the insured if they were able to recover from the carrier on the assigned claim. When suit was brought on the assignment, the carrier argued that under the terms of the settlement agreement the insured had successfully mitigated his damages and that therefore the plaintiffs were not entitled to recover more than a nominal amount on their assigned claim. We rejected that argument and allowed plaintiffs to recover the full amount of the outstanding judgments. As we noted in that case:

> "* * * The effect of following the defendant's argument would be to defeat the purpose of these assignments. An injured plaintiff would be reluctant to accept an assignment unless it provided that the insured would be released only upon *full* recovery from the insurer. And, if the insured could assign only on those terms, he might feel compelled to bring the litigation himself in order to see that his interests were properly protected. The result for the insurer would be the same, but the insured and the plaintiff would be remitted to what the Pennsylvania court aptly called a 'needlessly complicated and unjust procedure.' *Gray v. Nationwide Mut.*

*Ins. Co.,* 422 Pa at 511, n. 7, 223 A2d at 13, n. 7." 252 Or 296 at 310-11.

■ We believe that the same reasoning is applicable to this case. Prior to the execution of the covenants not to execute, Parker was legally liable on the outstanding judgments. He also had a valuable cause of action against the defendant for the full amount of those judgments. In exchange for the covenants not to execute, Parker assigned his claim against the defendant to plaintiffs. At the time of the assignment, Parker had not yet been relieved of his liability, and, in our view, plaintiffs received from him exactly what they bargained for: Parker's unimpaired cause of action against the defendant for the full value of the outstanding judgments. *See also Gray v. Nationwide Mutual Insurance Co.,* 422 Pa 500, 223 A2d 8 (1966); Annot., 12 ALR3d 1158 (1967); Annot., 63 ALR3d 627 (1975).

In summary, we find no error in the judgment below.[5]

Affirmed.

---

[5]Plaintiffs, of course, will be entitled to only one satisfaction of their judgments as a matter of equity, and therefore defendant will not be subjected to double liability. *See Starr v. Heckathorne,* 270 Or 238, 240-41, 527 P2d 401 (1974).