[No. D009881. Fourth Dist., Div. One. Apr. 23, 1990.]

BRENDA KRACHT, as Administratrix, etc., Plaintiff and Appellant,
v.
PERRIN, GARTLAND & DOYLE et al., Defendants and
Appellants.

**COUNSEL**

John E. Yeager for Plaintiff and Appellant.

Klinedinst & Fliehman aand Dennis W. Fliehman for Defendants and Respondents.

## OPINION

**FROEHLICH, J.**—Plaintiff Brenda Kracht, as administratrix of the estate of William Thomas Wacha, appeals from an order of dismissal entered after the demurrer to Kracht's complaint by defendants Perrin, Gartland & Doyle et al. (hereafter Attorneys) was sustained without leave to amend. Kracht argues the causes of action for legal malpractice alleged in her complaint are properly assertable by her as assignee, notwithstanding contrary California case law for the following reasons: (1) the claims are governed by Oregon law, which allegedly allows assignment of such claims; and (2) even if California law applies, the claims are assignable under California law.

### 1. *Factual and Procedural Background*

We accept as true all allegations stated in the complaint. (*Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].) Based thereon, it appears that in 1983 defendants were attorneys licensed to practice law in Oregon, but were not licensed in California. In July of 1983 Kracht filed a complaint against a Charles Hogue in California. In 1986 Kracht served discovery upon Hogue, who was representing himself in propria persona. Hogue allegedly consulted Attorneys while in Oregon with respect to the lawsuit. They agreed to advise him, and thereafter assisted in the preparation of responses to the discovery requests (apparently while in Oregon), and helped supervise, file and serve the responses in San Diego. The latter activities purportedly violate California Business and Professions Code sections 6125 and 6126, as well as Oregon Disciplinary Rule 3-101(B).

The responses were found to be inadequate. As a result of such deficiencies, judgment was entered in favor of Kracht. Kracht alleges that the deficiencies in the responses resulted from negligence on the part of Attorneys, and that had they exercised proper skill and care while assisting Hogue, the judgment would not have been entered.

In September of 1988 Kracht (as judgment creditor of Hogue from the prior action) sought and obtained a court order, pursuant to Code of Civil Procedure sections 708.510 and 708.520, compelling Hogue to assign all choses in action which he held against Attorneys. ▇▇▇▇ The order was obtained without notice to or opposition by Attorneys.[1] Kracht

---

[1] Code of Civil Procedure section 708.510 does not require that notice of the motion to cause an assignment be given to the obligor of the judgment debtor. The order of assignment does not affect the obligor's rights until notice of the order is received by the obligor. (Code Civ. Proc., § 708.540.) The fact that the choses in action were ordered assigned under Code of Civil Procedure section 708.510 does not preclude a challenge to whether the claims were

thereafter filed a complaint for legal malpractice against Attorneys as assignee of the claims.

Attorneys demurred on the ground that legal malpractice claims are not assignable, and hence Kracht could not bring the action against Attorneys. In opposition, Kracht contended the count alleging legal malpractice was assignable under Oregon law, and that the remaining counts (breach of statutory duty, constructive fraud and ordinary negligence) were not legal malpractice claims and hence were fully assignable. The trial court sustained the demurrer without leave to amend, concluding that the gravamen of all the claims was legal malpractice, that California law applied to the question of whether the claims were assignable, and that legal malpractice claims are not assignable under California law. After entry of the order of dismissal (Code Civ. Proc., § 581, subd.(f)(1)), Kracht appealed.

### 2. *The Gravamen of Kracht's Claims Is Legal Malpractice, and Such Claims Are Not Assignable Under California Law*

■ Kracht first argues that whatever prohibition may exist against assigning legal malpractice claims,[2] her third cause of action for "constructive fraud" causing pecuniary loss is fully assignable. However, the trial court concluded, and we agree, that *all* of plaintiff's claims (regardless of the theories pled) are for legal malpractice. An injury suffered by reason of a defendant's conduct gives rise to a single cause of action, regardless of how many theories are pled by the complaint. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) Where the injury is suffered by reason of an attorney's professional negligence, the gravamen of the claim is legal malpractice, regardless of whether it is pled in tort or contract. (See *Jackson* v. *Rogers & Wells* (1989) 210 Cal.App.3d 336, 346, 349 [258 Cal.Rptr. 454] [fraud and breach of contract theories, where alleged misfeasance were acts requiring professional "judgment calls," treated as malpractice claim for assignability purposes]; see also *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 428-429

---

assignable *ab initio,* because the Legislature specifically noted that section 708.510 ". . . does not make any property assignable that is not already assignable." (See legis. committee com. (1987 ed.) West's Ann. Code Civ. Proc. (1987 ed.) § 708.510 p. 479, Deering's Ann. Code Civ. Proc. (1983 ed.) § 708.510, p. 537.)

[2] The first two counts allege claims for violation of Business and Professions Code sections 6125 and 6126 (first cause of action) and Oregon Disciplinary Rule 3-101(B) (second cause of action) because Attorneys purportedly "practice[d] law in California" in violation of those statutes. In her opening brief on appeal, Kracht concedes both those counts are for legal malpractice, albeit that the negligence is premised on the statutory violations. Kracht concedes her fourth cause of action, alleging "ordinary" negligence, is also for legal malpractice. As to these claims Kracht argues they are torts causing pecuniary loss, assignable under California and/or Oregon law, and are not barred by the general rule against assignment of malpractice claims.

[173 Cal.Rptr. 917] [statute of limitation governing malpractice claims applied to complaint whether pled as breach of contract or tort claim].)

It is clear that the "constructive fraud" count is rooted in the same conduct—professional negligence—as all of the other counts.[3] Accordingly, all counts in the complaint are subject to the same rules governing assignability of legal malpractice claims.

It is now well settled that under California law[4] a former client may not voluntarily assign his claims for legal malpractice against his former attorneys. In *Goodley* v. *Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389 [133 Cal.Rptr. 83], and more recently in *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d p. 336, the courts determined that although choses in action for property or pecuniary losses are generally assignable, a claim for legal malpractice is more akin to those types of claims which are *not* assignable, i.e., claims for personal injury, wrongs of a purely personal nature (such as injuries to the reputation or feelings of the injured party) or breaches of contracts of a purely personal nature (such as promises of marriage). (*Goodley* v. *Wank & Wank, Inc., supra,* 62 Cal.App.3d at pp. 393-395; *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d at pp. 341-342.) *Goodley* and *Jackson* concluded that the attorney-client relationship (although containing contractual elements) is unique and involves a highly personal and confidential relationship, making the relationship ". . . more analogous to a contract of a personal nature than to an ordinary commercial contract" (*Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d at p. 342), and rendering claims for negligent breach thereof nonassignable.

Moreover, *Goodley* and *Jackson* noted that because of the uniquely personal nature of the relationship, numerous public policy considerations were involved in determining whether claims for legal malpractice should be assignable. *Goodley* noted the attorney owes a duty of undivided loyalty and diligence in representing the client. Such duty is personally owed by the attorney and may not be delegated to others, and is owed solely to the client, his one intended beneficiary. Assignability would encourage commercialization of claims, and would force attorneys to defend themselves against persons to whom no duty was ever owed. Moreover, the legal profession is debased by such commercialization, because it could (1) encourage unjustified lawsuits; (2) generate increased malpractice lawsuits, burdening the profession, the court system and (to the extent malpractice premiums would inevitably rise and be passed to the consumers) the public;

---

[3] Indeed, the complaint alleges the constructive fraud allegedly occurred *because* Attorneys were unable to, and failed to, accomplish their tasks using reasonable care and skill.

[4] The vast weight of authority from other jurisdictions also holds that legal malpractice claims are not assignable. (See *Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d at p. 343.)

and (3) promote champerty. (*Goodley* v. *Wank & Wank, Inc., supra*, 62 Cal.App.3d at p. 397.) Assignability could conceivably reduce the public's access to legal services, since the ever present threat of assignment by irresponsible clients (seeking quick financial gain) could cause lawyers to evaluate more selectively the desirability of representing a particular client. (*Id.* at pp. 397-398.)

*Jackson* cited additional policy considerations militating against assignability. The sanctity of the relationship, with its duties of vigorous representation and undivided loyalty, is imperiled by assignability. If an attorney perceives that his current adversary might some day be entitled to sue him for malpractice, he may be reluctant to pursue vigorously the current litigation for fear of providing motivation (i.e., his adversary's wrath) for a later malpractice action. Such a damper on the attorney's zeal also undermines the client's trust in his attorney, because the client could well question whether the attorney was making tactical choices based solely on the client's best interests. (*Jackson, supra*, 210 Cal.App.3d at pp. 347-348.)

The public policy concerns expressed in *Jackson* and *Goodley* are violated by *any* assignment of claims, whether voluntary or (as here) involuntary. Additional reasons against assignability are suggested by this case, involving an *involuntary* transfer to the former adversary. First, a suit could be filed, even though the former client (to whom the duty was owed) was entirely satisfied with the services and opposed the filing of a malpractice lawsuit.[5] Second, a suit brought on a claim acquired by involuntary assignment, and against the client's wishes, places the attorney in an untenable position. He must preserve the attorney-client privilege (the client having done nothing to waive the privilege) while trying to show that his representation of the client was not negligent.[6] Finally, a malpractice suit filed by the

---

[5] Courts in two other jurisdictions have declined to uphold involuntary assignments of malpractice claims, in part because the client, as the personal beneficiary of the duty owed by the attorney, should not be involuntarily divested of the decision as to whether to sue for a breach thereof, since such a rule would permit malpractice lawsuits without regard to (or even contrary to) the client's wishes. (See *Christison* v. *Jones* (1980) 83 Ill.App.3d 334 [405 N.E.2d 8]; *Chaffee* v. *Smith* (1982) 98 Nev. 222 [645 P.2d 966].) While there is no indication of Hogue's desires in this case, the complaint is devoid of any indication that he was dissatisfied with Attorneys or wished to file a malpractice action.

[6] In the ordinary malpractice action brought by a client, the client may not sue for breach of the attorney's duties and also simultaneously prevent the attorney from defending himself by invoking the privilege. (Evid. Code, § 958.) The holder of the privilege, the client, implicitly waives the privilege by filing such a suit. In an involuntary assignment, however, the suit is not filed by the client, and hence he has taken no action upon which to premise an "implied waiver." An involuntary assignment thus unfairly prejudices either the attorney (by precluding any defense based on privileged communications) or the client (by permitting the assignee to waive the privilege without the client's consent).

Kracht claims this problem is nonexistent, contending a malpractice suit does not *necessarily* waive the privilege. However, two of the cases cited by Kracht for that proposition (*Estate*

former adversary is "fraught with illogic" (*Jackson, supra,* 210 Cal.App.3d at p. 348) and unseemly arguments: In the former lawsuit Kracht judicially averred and proved she *was entitled* to recover against Hogue; but in the malpractice lawsuit Kracht must judicially aver that, but for attorney's negligence, she *was not entitled* to have recovered against Hogue. Reduced to its essence, Kracht's argument in the malpractice action is "To the extent I was not entitled to recover, I am now entitled to recover."

Because of the uniquely personal nature of the attorney-client relationship, and the numerous public policies which would be violated if involuntary assignments of malpractice claims were allowed, we agree with *Goodley* and *Jackson* that California law precludes such assignments.

Kracht argues, however, that whatever policy considerations might normally bar assignability arise only in the context of an attorney-client relationship, and are not applicable here because Attorneys' actions must be treated as the acts of mere laymen. Kracht contends the failure to obtain a California license transmutes the acts of Attorneys into the acts of mere laymen because Attorneys were engaged in the unauthorized practice of law.

Kracht cites no authority for the novel proposition that an attorney-client relationship, formed between a licensed attorney and a resident of the licensing state, is forfeited merely because advice or services are also rendered outside the borders of the licensing state. In our view, whether or not the foreign attorney also possesses a California license does not denigrate the existence or fundamental attributes of a validly extant attorney-client relationship. The attorney is still bound to preserve his client's confidences and privileged communications, still bound by fiduciary obligations, and still obligated to render competent legal advice, regardless of where he might travel while performing those services.

While the failure to comply with licensing statutes, when necessary, may well have specific consequences (i.e., inability to appear formally in state courts; restrictions on the ability to solicit clients in California or to establish California offices; potential misdemeanor liability for "practicing" without a license), we are convinced that a fully operable attorney-client relationship is not transformed into a layman-client relationship merely because a portion of the services are also rendered in California. Accordingly, the

---

*of Kime* (1983) 144 Cal.App.3d 246 [193 Cal.Rptr. 718] and *Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591 [208 Cal.Rptr. 886, 691 P.2d 642]) are not malpractice actions and hence provide utterly no support for that proposition; and the other case (*Schlumberger Limited* v. *Superior Court* (1981) 115 Cal.App.3d 386 [171 Cal.Rptr. 413]) states precisely the opposite proposition. (*Id.* at p. 392.)

policy considerations barring assignability remain fully applicable to Kracht's claims against Attorneys, even though some of the services, rendered within the context of a valid attorney-client relationship, may have been performed in California.

### 3. *Even If Oregon Law Recognizes Assignments of Legal Malpractice Claims When Made in Oregon, California Law Governs the Validity of Assignments Ordered by California Courts*

■ Kracht also seeks to avoid the California proscription against assignment by contending that Oregon law, purportedly permitting assignment of such claims,[7] is applicable and validates the assignment. Kracht argues that a malpractice claim, being an intangible property interest, is located in Oregon because that state is the domicile of its owner. Kracht therefore argues that Oregon law governs the claim's assignability.

Under conflict of laws principles, even if Oregon law permits such claims to be assigned, California law still governs whether the assignment itself is valid or enforceable in California. Under the Restatement Second, Conflict of Laws (which California follows—see *Henderson* v. *Superior Court* (1978) 77 Cal.App.3d 583, 592 [142 Cal.Rptr. 478]), even if a claim is assignable, the assignment itself is a separate act (1 Witkin Summary of Cal. Law (9th ed. 1987) Contracts, § 66, p. 102), the validity of which is tested with reference to the law of the state with the most significant relationship to the assignment. (Rest.2d Conf. of Laws, § 209, p. 681.)[8] Normally the state

---

[7] Kracht relies on *Collins* v. *Fitzwater* (1977) 277 Ore. 401 [560 P.2d 1074], as holding that malpractice claims are assignable. We note, however, that *Collins* did not directly decide malpractice claims are assignable; instead, the attorney there conceded they were assignable, and only argued that permitting such assignments would violate the public policies, embodied in the securities laws, holding corporate directors liable for violations of securities laws. (560 P.2d at p. 1076.) *Collins* only decided that it was not against public policy to permit nonculpable directors to seek indemnity from culpable attorneys, by way of a malpractice claim. (560 P.2d at p. 1078.) *Collins* did not decide whether assignment of such claims violated the *other* public policies which convinced California courts, along with numerous other jurisdictions, to prohibit such assignments.

In light of our analysis, it is unnecessary to guess at what the Oregon courts might hold if directly confronted with the issue. We do note, however, that *Collins* was decided without the benefit of the analysis contained in the numerous subsequent cases holding against assignability, and has not been subsequently cited in Oregon for the holding that such claims are assignable. We also note that Oregon law contains the same proscription against assignment of personal injury claims (see *Geertz* v. *State Farm Fire and Casualty* (1969) 253 Ore. 307 [451 P.2d 860, 861]) as does California, and that it was this proscription (along with the policy considerations) which convinced the *Goodley* court that malpractice claims were not assignable. We are thus unconvinced that an Oregon court, if confronted with the issue directly, would necessarily adhere to the *Collins* dicta. Moreover, there is no Oregon case addressing additional policy concerns, discussed above, resulting from involuntary assignments as distinguished from voluntary assignments.

[8] Although the principles cited in section 209 discuss assignment of contractual rights, assignments of tort claims are apparently decided with reference to the same rules. (See Rest.2d Conf. of Laws, Assignment of Contractual Rights, Introductory Note at pp. 676-677.)

where the assignment took place has the most significant relationship to the assignment, and its law will be applied to determine the validity of the assignment. (Rest.2d Conf. of Laws, § 209, Com. C. at pp. 682-683; see also *Fenton* v. *Edwards & Johnson* (1899) 126 Cal. 43 [58 P. 320] [Minnesota domiciliary assigned chose in action to Illinois citizen; although "situs" of claim followed owner's Minnesota domicile, validity of assignment was decided with reference to law of Illinois where assignment occurred].)

Hogue was domiciled in Oregon. The law of California is applicable, however, because California has the most significant relationship to the assignment. The assignment was effected in California, upon motion by a California resident, by an order of a California court; and the assignee and assignor (at least to the extent Hogue was subjected to the court's jurisdiction in connection with the order) were in California at the time of the assignment. Moreover, the assignment was effected in order to assist in the collection of an underlying California court judgment. Finally, using a "governmental interest" analysis (see, e.g., *Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co.* (1980) 103 Cal.App.3d 198, 204-206 [162 Cal.Rptr. 720]), Oregon has little interest in having its law applied to determine the validity of an assignment which was both effected by and is being litigated in California courts, while California's interest in having its law applied (in light of the public policies implicated by such an assignment) is significant.[9]

### 4. *Assuming Applicability of Oregon Law to This Assignment, and Enforceability Thereunder, California Courts Will Not Enforce Such Assignments on Public Policy Grounds*

California courts will not enforce rights arising under the law of foreign states, even though entirely valid under the otherwise applicable foreign law, where enforcement would violate important California public policy considerations. (*Hudson* v. *Von Hamm* (1927) 85 Cal.App. 323, 328-331 [259 P. 374]; *Weisz* v. *Weisz* (1971) 19 Cal.App.3d 676, 681-682 [97 Cal.Rptr. 18]; *Hall* v. *Superior Court* (1983) 150 Cal.App.3d 411, 416-417 [197 Cal.Rptr. 757].) California has concluded that the personal nature of a malpractice claim, coupled with the numerous public policies transgressed by assignments of such claims, renders assignments illegal as contrary to

---

[9]An additional factor favoring application of California law is the uncertainty. (See discussion, *supra*, at fn. 7 of the Oregon rule regarding assignability of malpractice claims; see also *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 314 [195 Cal.Rptr. 90] [where law of another state may apply but cannot be determined, California law applied because consistent with weight of authority in other states].) The uncertainty of the Oregon rule, coupled with the fact that California approach is consistent with the vast weight of authority in other states, further justifies application of California law.

public policy. (*Jackson* v. *Rogers & Wells, supra,* 210 Cal.App.3d at pp. 349-350.)

The policies stated in *Jackson* and *Goodley,* and the additional policy concerns presented by an involuntary assignment, as here, would be transgressed if California courts were to open their doors to enforcement of foreign assignments of malpractice claims. The increased litigation would burden our courts; the commercialization of such claims would be encouraged; and the legal profession would be debased by increased malpractice litigation filed by strangers to whom no duty was ever owed. California courts would suffer not only increased congestion, but would also be confronted with such intractable questions as whether the attorney-client privilege is waived by suits filed by involuntary assignees, the resolution of which would require resort to largely undecided foreign law questions. Finally, the attorney-client relationship would possibly deteriorate, as attorneys, fearful of retribution from antagonized former adversaries, might temper the zealousness of their advocacy to avoid increasing the incentive for the adversary to pursue a retaliatory malpractice lawsuit.

### CONCLUSION AND DISPOSITION

We therefore conclude that claims for legal malpractice are not assignable under California law; that the reasons for precluding voluntary assignment are even more forceful when considered with respect to involuntary assignment, as in this case; that where an Oregon assignment of such claims is sought to be enforced in California, California and not Oregon law should be chosen and applied; and that even if we assume Oregon law to sanction this sort of assignment, such Oregon rights would not be enforced in California on public policy grounds. The judgment is therefore affirmed.

Benke, Acting P. J., and Nares, J., concurred.