105 F.3d 664
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bernard FIDEL; David Fidel; Marit Fidel; Erik Fidel;
Hilda Fidel, Plaintiffs-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.;
Lexington Insurance Company; American International Group;
Stull, Stull & Brody; Gibson, Dunn & Crutcher LLP; Herbert
J. Young; Clemens, Glassman & Clemens; Gibraltar Officer
and Director, Defendant-Appellees.
 No. 95-55262.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 7, 1996.
Decided Dec. 19, 1996.
 
 1
 Before FLETCHER, TASHIMA and RESTANI*
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff-appellants Bernard Fidel, David Fidel, Marit Fidel, Erik Fidel and Hilda Fidel (collectively "appellants") were members of a shareholder class that participated in a settlement of a federal securities class action and now appeal the dismissal of their suit by the district court. More than four years after the court approved the settlement, appellants filed an action alleging, inter alia, misrepresentation and fraud in connection with the settlement by plaintiff class counsel and the settling defendants and their counsel. The district court granted defendants' motions to dismiss the complaint. We affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 Commencing in November 23, 1987, and thereafter, various plaintiffs filed class actions arising from a 1987 third quarter loss by Gibraltar Financial Corporation ("Gibraltar"). The complaints alleged federal securities and state law claims arising from the sale and purchase of Gibraltar securities. These actions were consolidated by the district court on May 9, 1988 into In re Gibraltar Financial Corporation Securities Litigation, Case No. 87-07876-MRP ("Gibraltar class action"). The claims in the class action included allegations that Gibraltar and certain of its officers and directors disseminated false and misleading statements about Gibraltar's financial condition during the period 1986 through 1989.
 
 
 5
 In 1989, the Gibraltar class action settled.[1] Following review of the terms of the settlement, the district judge issued an order on June 23, 1989, inter alia, (1) certifying the settlement class, (2) approving the form of the notice of settlement, and (3) directing that the plaintiffs' class counsel cause the notice of settlement to be mailed to members of the plaintiff class. Appellants' Excerpt of the Record, ("ER") 18, at 219-21, 224. The district court ordered plaintiffs' class counsel to publish, on or before July 18, 1989, a summary of the notice of settlement in The Wall Street Journal, after finding that this form and manner of notice was the best notice practicable under the circumstances. ER 18, at 224.
 
 
 6
 On July 11, 1989, plaintiffs' class counsel mailed the notice of settlement to all members of the proposed settlement class, and on July 18, 1989, published the notice of settlement in The Wall Street Journal. The final settlement proposed an aggregate payment of $8,500,000 by two insurance carriers, National Union Fire Insurance Company ("National Union") and Lexington Insurance Company ("Lexington"), the issuers of officer/director liability policies for Gibraltar.[2] The notice provided that a September 11, 1989 hearing was scheduled to determine the fairness of the proposed settlement, to consider final approval of its terms, and to consider any objection to the settlement. ER 18, at 225-27. The settlement notice also stated, though incorrectly, that the final date for opting-out of the class settlement was August 1, 1989.[3] ER 5.
 
 
 7
 Prior to the scheduled hearing, the Federal Deposit Insurance Corporation ("FDIC") sought permission to appear as amicus curiae for the purpose of investigating whether the proposed settlement would dissipate insurance funds otherwise available to cover losses suffered by Gibraltar's two banking subsidiaries, which had been placed under FDIC conservatorship. ER 18, at 10-11. The class plaintiffs, through their counsel, opposed the FDIC's position, contending, inter alia, that the FDIC was attempting to maximize its own position with respect to Gibraltar. In their opposition to FDIC's application, class counsel also explained the coverage of the two insurance policies. ER at 66-67. The district court denied the FDIC's application to appear as amicus curiae.
 
 
 8
 At the settlement hearing the FDIC filed an objection to the proposed settlement. Attached to the FDIC's filing was a Settlement Implementing Agreement, as amended, entered into between Gibraltar and its insurance carriers, whereby, upon approval of the settlement, Gibraltar agreed to surrender the National Union insurance policy in consideration for payment by the carriers of the entire settlement amount to the plaintiff class. The arrangement also provided that any future claims asserted under the National Union policy (face value $15-25 million),[4] would be covered by the Lexington insurance policy (face value $15 million).[5] ER at 18, at 15-20. The FDIC contended that this arrangement was unfair to Gibraltar's banking subsidiaries, which might assert claims for coverage under the policies. The FDIC urged the district court "not to approve the proposed settlement until the surrender provisions of this agreement have been removed." ER 18, at 11-14.
 
 
 9
 On September 11, 1989, the district court held the scheduled hearing to consider objections to the proposed settlement. FDIC's objections to Gibraltar's agreements with the insurance carriers were the only substantive matters discussed with the district court. Plaintiffs' class counsel took no position with regard to Gibraltar's arrangement with the insurance companies, essentially asserting that it was irrelevant to the district court's approval of the settlement. ER 18, at 51. After considering the FDIC's objections, the district court approved the settlement. ER 18, at 56. On September 19, 1989, final judgment was entered dismissing the Gibraltar class action. ER 18, at 104, 116. The final judgment provided, inter alia, that (1) the settlement was fair, reasonable and adequate; (2) the Notice of Settlement constituted sufficient notice to the class members under Rule 23; (3) the claims asserted by the class plaintiffs were dismissed with prejudice; and (4) any member of the settlement class not opting out of the settlement would be bound by it and would be barred from prosecuting the Released Claims (as defined in the settlement agreement). ER 18, at 112, 116-17.
 
 
 10
 Appellants were purchasers of Gibraltar's common stock and public debt securities during the period January 1986 through May 1988. Appellants allege they did not receive the notice of settlement until after the scheduled hearing of September 11, 1989, thus they did not attend.[6] Upon receipt of the settlement notice, appellants obtained claim forms for use by potential class members electing to participate in the class settlement. Allegedly believing that substantially all of the insurance available to pay stockholder claims would be consumed by the settlement, appellants did not attempt to opt-out of the settlement and instead submitted the settlement claim form. The claim form included language stating that claimants were required to waive any and all claims, known and unknown, against the settling defendants with respect to the claims being settled. According to appellants, their collective loss approximated $6.88 million. They recovered approximately $250,000 in the settlement of the class action.
 
 
 11
 Subsequently, Bernard Fidel ("Fidel") learned that Mercatura Trust, a large Gibraltar stockholder, had opted out of the settlement class and had sued Gibraltar. Surmising that additional insurance was available to pay Gibraltar stockholder claims, Fidel contacted the settlement class counsel, Gibraltar and its representatives, and the insurance companies and their counsel. Allegedly unsuccessful in his attempts to verify the existence of additional insurance from these parties, Fidel sent a letter dated June 12, 1990, to the district judge who presided over the class settlement, requesting that the court investigate the matter, and stating that Michael Glassman, one of the class counsel, admitted to the existence of additional insurance.
 
 
 12
 According to appellants, the court returned the letter on June 20, 1991, for failure to follow court filing procedures. Appellants also contend that on July 28, 1991, Fidel resubmitted his letter requesting an investigation, but the letter was not filed. The district court never responded to Fidel's request for an investigation, but apparently retained a copy of the initial letter in its own correspondence file. The second letter was not located at the court.
 
 
 13
 On December 14, 1993, allegedly believing that they had been deceived as to the availability of insurance to settle stockholder and bondholder claims, appellants filed the instant lawsuit against Gibraltar and its officers and directors, and their counsel; Gibraltar's two insurance carriers, their parent company, and their counsel; and two law firms representing the settlement class (collectively "defendants"). The complaint alleged that the defendants made a materially false, misleading and fraudulent "representation and statement" in connection with the settlement of the Gibraltar class action.
 
 
 14
 Defendants moved to dismiss the complaint asserting the claims were barred by the statute of limitations. Certain defendants argued additional bases for dismissal. At a June 27, 1994 hearing on defendants' motions, the court distributed copies of Fidel's initial letter, dated June 12, 1990, requesting an investigation. Following the hearing, Fidel submitted a declaration ("First Declaration") recanting the substance of his June 12, 1990 letter, stating that he falsely stated that Mr. Glassman informed him of any available additional insurance.
 
 
 15
 On August 10 & 11, 1994, the district court granted certain defendants' motions to dismiss the complaint in its entirety without leave to amend. The court stated:
 
 
 16
 The dismissal of plaintiffs' claims is based in part on the statute of limitations because it is clear that plaintiffs were on inquiry notice of their claims as of September 11, 1989. In fact, Dr. Fidel wrote a letter to the Court dated June 12, 1990 stating that he was on actual notice of various claims that he now raises in the Complaint. The Court gave a copy of the letter to all counsel at the hearing on June 27, 1994.
 
 ER 1, at 4.[7]
 
 17
 On January 12, 1995, the district court granted the remaining defendants' motions to dismiss on the same basis. In opposition to these motions, appellants submitted a second declaration ("Second Declaration") in which Fidel, alleging facts not asserted in the Complaint, stated that he did not rely upon the settlement notice in deciding to opt-out of the settlement because he received the notice after the date for opting-out of the class settlement.
 
 
 18
 On January 25, 1995, appellants moved the district court to reconsider its rulings and to set an evidentiary hearing concerning the correct date of his June 12, 1990 letter. In that filing, appellants submitted a third declaration ("Third Declaration") by Fidel, which averred that the initial version of his letter contained a typo and should have been dated June 12, 1991. Appellants' motion for reconsideration was denied as untimely on February 1, 1995.
 
 
 19
 On February 8, 1995, appellants demanded that the district court supply all correspondence between the district court and Fidel. The district court objected to the appellants' subpoena. A timely notice of appeal was filed on February 15, 1995, challenging the dismissal of the case against all defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 STANDARD OF REVIEW
 
 20
 We review de novo the district court's dismissal of the appellant's complaint on statute of limitations grounds. Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir.1993). Appellants' allegations are taken as true and viewed in the light most favorable to them. Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995). A dismissal with prejudice is inappropriate unless it appears beyond doubt that the appellants could not allege facts which would entitle them to relief. Id. A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 9(b) or 12(b)(6) is a ruling on a question of law and is reviewed de novo; the district court's decision "may be affirmed on any ground finding support in the record." Oscar v. University Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc) (referring to dismissals pursuant to Rule 12(b)(6)), cert. denied, 506 U.S. 1020 (1992); see also Wool v. Tandem Computers Inc., 818 F.2d 1433, 1438 (9th Cir.1987) (referring to dismissals pursuant to Rule 9(b)).
 
 DISCUSSION
 
 21
 Appellants contest the dismissal of their complaint as barred by the statute of limitations. In their complaint, appellants allege essentially two factual events that give rise to their claims of fraud and misrepresentation: (1) the settlement notice was false and misleading in that it misstated the insurance available to pay the claims of the settlement class, and (2) the settlement notice omitted the fact that the terms of the proposed settlement provided for the cancellation of an insurance policy by Gibraltar. The district court determined that appellants were on inquiry notice of the factual circumstances surrounding these events as of the September 11, 1989 settlement hearing.
 
 
 22
 Inquiry notice that triggers the running of the statute of limitations exists "[w]hen a plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his [or her] investigation (such as public records or corporation books)." Community Cause v. Boatwright, 177 Cal.Rptr. 657, 665 (Cal.Ct.App.1981) (emphasis in original). "The test is whether plaintiffs had actual or presumptive knowledge of facts sufficient to put them on inquiry." Baker v. Beech Aircraft Corp., 157 Cal.Rptr. 779, 787 (Cal.Ct.App.1979). Appellants must prove not only lack of knowledge, but also "[l]ack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date)." Id. at 783. The longest statute of limitations period for any of appellants' claims is four years, and for breach of fiduciary duty it is one year from discovery.[8]
 
 
 23
 For the purpose of the running of the statute of limitations on appellants' causes of actions,[9] except as to claims against settlement class counsel, we conclude that appellants were on inquiry notice of their claims as of September 11, 1989, the date of the settlement hearing. All of the facts that appellants allege were fraudulently concealed were available in sources open to their investigation. The settlement notice provided the following:
 
 
 24
 9.1 This Notice does not describe all of the details of the Stipulation of Settlement or the proposed judgment. You may desire to review the Stipulation of Settlement, the proposed judgment, or the motion papers described in Paragraph 6.3 of this Notice, copies of which may be obtained from Plaintiffs' Settlement Counsel.... Other pleadings and papers filed with the District Court in the Litigation may be inspected at the Office of the Clerk of the Court.
 
 
 25
 ER 3, at 11.
 
 
 26
 The settlement notice also contained the names of both insurance carriers, thus, appellants had an opportunity to further investigate the basis for, and background of, the settlement as to the insurance available to satisfy their claims. Further, plaintiffs' class counsel, in its opposition to the FDIC, submitted an excerpt of the National Union policy, describing the amounts of coverage available thereunder. This record was a part of the district court's file, and open to review by appellants. See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 633 n. 2 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.1981), cert. denied, 454 U.S. 1126 (1981) (suggesting, in dicta, that class members were on inquiry notice because relevant facts were available in the settlement agreement filed with the court).
 
 
 27
 Additionally, the FDIC, in a memorandum filed with the district court on the day of the settlement hearing, set forth its objection to the cancellation of the National Union insurance policy. Attached to that objection was the Settlement Implementing Agreement providing for the cancellation. The cancellation agreement was discussed at length at the settlement hearing. Moreover, Gibraltar placed the Settlement Implementing Agreement in the public record as early as July 17, 1989, attached as an exhibit in filings with the Securities and Exchange Commission. ER 20, 3-19. Thus, appellants had ample opportunity to obtain knowledge from sources open to their investigation, such as the public records in this case.
 
 
 28
 Appellants assert that Gibraltar's officers and directors and their counsel were under an affirmative duty to disclose the allegedly concealed facts, or not to misrepresent the terms of the settlement; and that inquiry notice is not sufficient as to such claims. Appellants fail to assert exactly what duty was owed to appellants by these defendants. Generally, no duty of professional care is owed toward third parties who are not the intended beneficiaries of the attorney's representation, or where imposition of such duty would intrude upon basic attorney-client relationship. See Omega Video Inc. v. Superior Court, 194 Cal.Rptr. 574, 581 (Cal.Ct.App.1983) (stating that of third parties, only intended beneficiaries have a cause of action against attorney's negligent misrepresentation of client); see also Goodman v. Kennedy, 556 P.2d 737, 743 (Cal.1976) (discussing negative aspects of imposing a duty of care to parties other than attorney's client). A defendant is liable to those persons to whom a representation is made. Walters v. Marler, 147 Cal.Rptr. 655, 666 (Cal.Ct.App.1978). In any event, as Gibraltar points out, appellants have not alleged any specific misrepresentation in the notice of settlement by the defendant Gibraltar officers or directors and their counsel.
 
 
 29
 Appellants also contend that, even if the settlement class was charged with inquiry notice of the subject matter of the settlement hearing, their status as bondholders was unaffected as the settlement only covered stockholder claims. This distinction is not legally relevant. All of the facts and circumstances allegedly giving rise to appellants' claims were known or could have been discovered at the time of the settlement hearing. Their status as bondholders does not toll or otherwise estop the accrual of appellants' causes of action.
 
 
 30
 As to appellants' claims against the settlement class counsel, a cause of action may lie for attorney malpractice. See Kracht v. Perrin, Gartland & Doyle, 268 Cal.Rptr. 637, 639 (Cal.Ct.App.1990) (stating that "[w]here the injury is suffered by reason of an attorney's professional negligence, the gravamen of the claim is legal malpractice, regardless of whether it is pled in tort or contract."). Here, the settlement class counsel, Clemens, Glassman & Clemens, and Stull, Stull & Brody, both held a fiduciary relationship with the settlement class. "A client damaged in the context of [a fiduciary] relationship is under no duty to investigate her attorney's actions unless she has actual notice of facts sufficient to arouse the suspicions of a reasonable person." Krusesky v. Baugh, 188 Cal.Rptr. 57, 60 (Cal.Ct.App.1982).
 
 
 31
 In this case, Fidel demonstrated actual knowledge of the facts giving rise to his alleged claims against class counsel as of June 12, 1990, the date of his initial letter to the district court.[10] In that letter he indicated that class counsel had admitted to him that additional insurance was available. Fidel's claim clearly falls outside the one-year statute of limitations period for attorney malpractice. Cal.Code Civ.Proc. § 340.6 (Deering 1991).[11]
 
 
 32
 Appellants argue that no attorney client relationship existed with class counsel, thus the statutory limitations period for breach of fiduciary duty of four years under Cal.Code Civ.Proc. § 343 (Deering 1991), is applicable. If an attorney-client relationship exists, however, the statute of limitations for legal malpractice or breach of fiduciary duty is identical. See Stoll v. Superior Court, 12 Cal.Rptr.2d 354 (Cal.Ct.App.1992). "Unless tolled, a claim based on either theory falls within the statutory term 'wrongful act or omission' and must be commenced within one year after the client discovers, or with reasonable diligence should have discovered, the facts constituting the act or omission, or four years from the date of the act or omission, whichever occurs first." Id. The attorney-client relationship between class counsel and appellants began, at a minimum, when the class was certified on June 23, 1989. ER 3, at 4. See Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1207 n. 28 (11th Cir.1985) (citing Van Gemert v. Boeing Co., 590 F.2d 433, 440 n. 15 (2d Cir.1978), aff'd, 444 U.S. 472 (1980)). Thus, the one-year statute of limitations period is applicable to appellants' attorney malpractice claims.
 
 
 33
 Although it is clear that Fidel had actual notice well before the one-year period, as to the remaining four appellants, a factual question exists as to when they received actual notice of their claims in the context of their fiduciary relationship with class counsel. Although Fidel claims to be speaking for all the appellants in his 1990 letter to the court, no factual findings were made as to the remaining appellants, thus the district court should have made findings on this issue unless the action is subject to dismissal on other grounds.
 
 
 34
 As other grounds, class counsel defendants assert, inter alia, protection under Section 47(b) of the California Civil Code, which creates a privilege for publications made in any judicial proceeding.[12] The privilege encompasses "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Silberg v. Anderson, 266 Cal.Rptr. 638, 642 (Cal.Ct.App.1990). Under Federal Rule of Evidence 501, state law privileges raised in the context of a defense to state law claims are recognized in federal court.
 
 
 35
 There appears to be an exception, however, to the finality of judgments protected by the § 47(b) privilege in cases where a judgment has been obtained by "extrinsic fraud," and "the aggrieved party [has been] deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense." Moore v. Conliffe, 29 Cal.Rptr.2d 152, 157 n. 5 (Cal.Ct.App.1994) (quoting 8 Witkin, Cal.Procedure (3d ed. 1985)). This is a "narrow doctrine permitting a collateral attack on a judgment," despite the § 47 privilege and the normal preclusive effect of the judgment. Id. In this case, however, the complaint, to the extent it attempts to allege an extrinsic fraud which might overcome a § 47(b) privilege, could not survive either a F.R.Civ.P. 9(b) or 12(b)(6) motion to dismiss.
 
 
 36
 Appellants participated in the proceedings by filing claims. The only "misrepresentations" made to these appellants were in the notices complained of, which were approved by the court, and which directed appellants to the publicly available data containing the answers to any questions they might have.[13] As indicated, all of the key information was on file and discussed in open court and it is exactly the sufficiency of notice which was already decided by the court in the prior proceeding. Thus, the fraud alleged is not extrinsic or collateral to the final judgment which is challenged, and no actionable statement extrinsic to the proceeding could defeat the § 47 privilege.[14] Contrast Estate of Anderson v. Anderson, 196 Cal.Rptr. 782, 789 (Cal.Ct.App.1984) (defining intrinsic and extrinsic fraud and finding fiduciary bank affirmatively misled both the potential objectors to sale and court). Accordingly, we also affirm the dismissal of the attorney malpractice causes of action.
 
 
 37
 Appellants also argue that the district court erred in denying their requests for leave to amend the complaint. The district court denied appellants' motion for leave to amend the complaint to include as named defendants (1) the three name partners of Clemens Glassman (the firm had dissolved prior to filing of the complaint), and (2) Jules Brody, one of the name partners of Stull, Stull & Brody. This court reviews denial of leave to amend for abuse of discretion. Allen v. Beverly Hills, 911 F.2d 367, 373 (9th Cir.1990). "Absent a definite and firm conviction that the district court committed a clear error of judgment, we will not disturb the district's court decision." Id.
 
 
 38
 In view of our affirmance of the dismissal of the action, there was no error of judgment in denying the leave to amend; it would have been futile. Thus, denial of the motion to amend is affirmed as well.
 
 
 39
 AFFIRMED.
 
 
 
 *
 Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The settlement agreement resolved only claims based on the purchase of common stock. The settlement did not resolve debenture claims
 
 
 [2]
 A previous proposed settlement of $9.5 million had been reduced to $8.5 million as a result of the Federal Deposit Insurance Corporation ("FDIC") freeze of Gibraltar's assets, thereby preventing a $3 million contribution by Gibraltar
 
 
 [3]
 The actual opt-out date set by the court was August 10, 1989
 
 
 [4]
 The National Union policy provided for a $10 million excess layer over $15 million. According to defendants, the excess layer was specifically excluded under the policy for claims arising from disclosure of the third quarter financial statements at issue in the Gibraltar class action. Thus, contrary to appellants' claims, the excess layer was not available to satisfy any settlement claims
 
 
 [5]
 The arrangement also provided that Lexington would cover any claim arising from the action entitled D. Neubronner, as Trustee for Mercatura Trust v. Young, No. CV-89-3377-MRP (C.D.Cal.), appeal docketed, No. 95-55682 (9th Cir.1995)
 
 
 [6]
 None of the defendants here are alleged to have delayed the individual notice. Apparently, forwarding by the nominee and similar delays were the problem
 
 
 [7]
 The district court also denied appellants' motion for leave to amend the complaint to include as named defendants (1) the three name partners of Clemens Glassman upon learning that the firm had dissolved prior to filing of the complaint, and (2) Jules Brody, one of the name partners of Stull, Stull & Brody. Both firms acted as class counsel in the Gibraltar settlement
 
 
 [8]
 Appellants alleged forty-seven causes of action against defendants, asserting, inter alia, the following causes of action: breach of fiduciary duty or other special duty; fraud and constructive fraud; negligent misrepresentation; breach of contract; interference with contractual relations; interference with prospective economic advantage; attorney malpractice. In addition, appellants asserted conspiracy and aiding and abetting, for which the limitations period is the same as for the underlying wrong
 
 
 [9]
 Our finding of inquiry notice is not applicable to appellants' claims against the settlement class counsel for claims of attorney malpractice and breach of fiduciary duty. We discuss this claim separately. See infra
 
 
 [10]
 After this action was dismissed, Fidel raised arguments that the letter erroneously was dated 1990 instead of 1991. His motion for reconsideration was rejected as untimely because it was not made within 10 days of the dismissal. Local Rule 7.16. Fidel also presented no reason for not correcting the alleged misdating earlier. In any case, June 12, 1991, is outside the limitations period for attorney malpractice, as well
 The court also properly disregarded his affidavits disputing his prior affidavits and the contents of the letter. See generally Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543 (9th Cir.1975) (declarant cannot disavow his or her own prior statements to create a material issue of fact).
 
 
 [11]
 Section 340.6 states in relevant part:
 (a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.
 Cal.Code Civ.Proc. § 340.6.
 
 
 [12]
 In 1994 the statute was amended, without express retroactive effect, to exclude concealment of the existence of an insurance policy or policies. See 1994 Cal.Legis.Serv. ch. 700, § 2 (West) (S.B. 1457). As no part of the Civil Code is retroactive unless expressly declared, § 47(b)(3) does not apply here. See Cal.Civ.Code § 3 (West 1996)
 
 
 [13]
 The other alleged misrepresentations by class counsel that may not be covered by § 47, are in post settlement communications with Fidel. If appellants were party to the communications, however, they, like Fidel, would have actual notice, and thus be barred for statute of limitations reasons. In any case, these statements are not the source of the injury alleged in the complaint
 
 
 [14]
 As indicated, Fidel recanted his statement that he relied on the notice in deciding not to opt out. For purposes of this motion we have assumed the other appellants continue to allege, as they do in the complaint, that they would have opted out had the notice not been "fraudulent." For purposes of this issue we have assumed further that appellants allege that because of the fraudulent notice they were prevented from objecting to the settlement before its approval