Argued and submitted October 26, 1992, affirmed March 17, reconsideration denied July 7, petition for review pending 1993

OREGON SHIITAKE TECHNOLOGY, INC.,
an Oregon corporation;
and Shiitake Marketing Group, Inc.,
an Oregon corporation,
*Plaintiffs,*

*and*

Ron FISCHER,
individually and as president of
Oregon Shiitake Technology
and Shiitake Marketing Group, Inc.,
*Appellant,*

*v.*

James M. KENNEDY;
Jack W. Schifferdecker, Jr.;
and Lindsay, Hart, Neil & Weigler,
a partnership,
*Respondents.*

(8907-04306; CA A66491)

848 P2d 635

Mark E. Griffin, Portland, argued the cause and filed the briefs for appellant. With him on the briefs was Griffin & McCandlish, Portland.

Daniel M. Ricks, Portland, argued the cause for respondents. With him on the brief was Kennedy King & Zimmer, Portland.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

ROSSMAN, P. J.

---

* Leeson, J., *vice* Buttler, J., retired.

## ROSSMAN, P. J.

Plaintiff Fischer was the sole shareholder and sole director of two corporations, Oregon Shiitake Technology, Inc., and Shiitake Marketing Group, Inc. The corporations made sales to investors of mushroom-growing logs, along with contracts under which the mushrooms would be marketed for the investors. In November, 1985, the Oregon Corporation Division notified the corporations and Fischer (plaintiffs) that they were involved in the sale of securities and that they would be required to register the securities. Defendants are the attorneys hired to handle the securities matters.

The corporations failed. Plaintiffs then brought this malpractice action on the theory that the failure and the lost potential contracts and profits were a result of the advice of the attorneys. Archer, Daniel, Midlands (ADM), a multi-billion dollar food processor, had expressed an interest in contracting with plaintiffs. Plaintiffs claimed that, when the offering memorandum that detailed the history of the corporations was shown to ADM, it stopped dealing with plaintiffs. They also claimed that the restrictions of the securities registration prevented them from executing a contract with Waterfield Farms, a division of Weyerhaeuser that produced and marketed specialty foods.

Defendants moved for a directed verdict against Fischer, arguing that there was no evidence that defendants had harmed him individually. The trial court granted the motion. The jury then returned a verdict in favor of the corporations. Fischer appeals, arguing that the court erred in directing a verdict against him. He contends that there was evidence that defendants represented him personally and that he suffered personal loss because of defendants' actions.

The thrust of Fischer's position seems to be that, if he presented *any* evidence that defendants gave him advice on any matter, and if he presented *any* evidence of damage, he has presented a jury question on whether defendants have caused him damage. He relies on *Collins v. Fitzwater*, 277 Or 401, 560 P2d 1074 (1977), in which the Supreme Court stated that the duty of a corporate attorney to determine whether notes were subject to the provisions of ORS Chapter 59

extended to the corporation and to the members of its board of directors. 277 Or at 406. Fischer contends that "it follows that defendants' duty to provide legal services consistent with the standard in the community extends to plaintiff Fischer in his individual capacity."

We do not agree that *Collins* applies as broadly as Fischer claims. In that case, the attorney represented a corporation and members of its board of directors on securities matters. The attorney failed to advise the corporation to register the securities it issued and to advise the corporation or its directors of the liabilities that might follow upon sale of unregistered securities. The court held that a director who had been held liable for securities violations could sue the attorney. Here there is no issue of personal liability based on the corporation's failure to act because an attorney failed to give advice. Here, the securities issued by the corporations were registered and Fischer faced no liability for the sale of unregistered securities.

To show that defendants were negligent, Fischer had to prove not only that defendants represented him and that they did so negligently, but that the representation caused individual injury. *Chocktoot v. Smith*, 280 Or 567, 570, 571 P2d 1255 (1977); *Wilkinson v. Walker*, 84 Or App 477, 481, 734 P2d 385, *rev den* 303 Or 535 (1987). Fischer argues that he sought advice not only on behalf of the corporation, but also "in several different capacities," including as an individual. He argues that there was evidence to show that defendants represented him, because they caused him to register as a salesperson for the securities, because they gave him advice regarding civil liability and criminal prosecution, and because third party testimony showed that advice was given to him individually.[1]

Defendants do not dispute that they told Fischer to register as a salesperson. However, Fischer did not show that

---

[1] Fischer also argues that defendants "gave advice to plaintiffs concerning the sale of technology to ADM, and questioned who owned the technology." He does not provide any explanation of how that advice to "plaintiffs" damaged him personally; nor does he explain how the letter on which he relies, which advises him to retain legal counsel to represent him in negotiations, constitutes defendants' representation of him as an individual.

he sustained damages arising from his registration. Registration meant only that he had permission to sell the securities. ORS 59.165(1). Furthermore, he does not claim that any advice about the liabilities that he would face if he violated the securities laws was incorrect or that the advice harmed him. The third party testimony to which he refers is testimony by a person who had relayed a message from defendants to the effect that, if Fischer failed to send rescission documents to past purchasers, he could go to jail. Fischer did not show how that advice caused him personal damage.

■      Fischer argues that the jury could have found damages from evidence that, when the corporation failed and the contracts did not materialize, he suffered losses, because some of the lost contracts would have benefitted him more than they would have the corporations. He argues that there was evidence from which the jury could have concluded that he lost $15,000 per month for four months for loss of a management fee from ADM.

However, there was no evidence that defendants represented Fischer in management fee negotiations or contracting. Furthermore, there was no evidence of a contract. The evidence showed only that an employee of ADM was authorized to engage in negotiations with Fischer to reach the "parameters" of an agreement that would then have been "turned over to people far tougher than [the ADM employee] to continue the negotiations." From that evidence, any conclusion that a contract would have resulted would be speculative.

■      Fischer also asserts that the jury could have found that he lost wages in his capacity as director of the corporations. He cites no authority for the proposition that he was entitled to claim damages that would be derivative of damage sustained by the corporations. His position was analogous to that of an employee whose employment has been terminated because a third party unintentionally harmed the employer. Under those circumstances, the employee has no right of action against the third party. *See Ramirez v. Selles*, 308 Or 609, 615, 784 P2d 433 (1989). The trial court did not err in granting defendants' motion for a directed verdict against Fischer individually.

Affirmed.