Argued March 26; affirmed May 12, 1931

# NICHOLS *v.* JACKSON COUNTY BANK
### (298 P. 908)

*G. M. Roberts,* of Medford, for appellant.

*Don R. Newbury,* of Medford (Newbury & Newbury, of Medford, on the brief), for respondent.

RAND, J. This is an action for conversion. The complaint states two causes of action; one for the conversion of 210 head of sheep upon which plaintiff had a chattel mortgage, and the other for the conversion of 14 head belonging to plaintiff's assignor, whose claim was assigned to plaintiff for the purpose of collection only. The trial of the cause resulted in a verdict and judgment for plaintiff upon both causes of action and defendant appealed.

The facts out of which these causes of action arose are as follows: On or prior to November 18, 1924, the defendant bank was the owner of 440 head of ewes which it had delivered to one Alfred Matlock under a written agreement that Matlock would run the sheep at his own expense for a period of three years; that each was to have one-half of the wool and increase, the increase to be divided once each year and the bank's part thereof to be marked with a distinguishing brand; that Matlock should have the right to sell and dispose of any of the sheep and for each head sold he was to replace it with one of his own; that, in case any of the original stock died, each party should sustain one-half the loss, Matlock replacing one head for every two head that died during said period. Matlock operated under this agreement until April 25, 1925, when he sold an undivided one-half interest therein to a Mr. Sims, at which time Matlock and Sims gave a note to the bank for $7,092.32. Shortly thereafter Sims surrendered his interest in the sheep to Matlock, the bank releasing him from his obligations upon the note and accepting from Matlock his individual note for the

amount then owing to the bank. After the purchase of an interest therein by Sims and the giving of their said joint note, the original contract between the bank and Matlock seems to have been rescinded by mutual consent for none of its provisions were complied with by Matlock nor enforced by the bank. After Sims' retirement from the business and the bank's acceptance of Matlock's note for the amount then due and on October 26, 1926, plaintiff sold and delivered to Matlock 200 head of ewes and 10 bucks, Matlock paying a part of the purchase price in cash and giving a note signed by himself and wife to plaintiff for the unpaid balance of $1,385, which note was secured by a chattel mortgage on 210 head of ewes and their increase. The property mortgaged was described in the chattel mortgage as follows:

"Two hundred ten (210) head of ewes and their increase, which said ewes are now branded and marked and which said increase shall be branded and marked as follows, to wit: Underbit on each ear and 'Padlock' brand."

This was Matlock's earmark and brand and the one commonly used by him on all the sheep owned by him, including those purchased from the bank. Subsequent to these transactions and on January 22, 1927, Matlock gave to the bank a bill of sale for all his sheep, describing them as follows:

"Seven hundred (700) head of ewes, Ramboulet breed, marked with underbit in each ear. Ten (10) head of bucks. Two hundred ten (210) head ewes subject to chatel mortgage of $1,385 to T. F. Nichols. Total number of head belonging to me 920 head, together with all increase. The intent of this bill of sale is to convey title to all the sheep I now own or may hereafter own, together with all increase and all wool that may be clipped from these sheep."

This bill of sale, the bank contends, was intended as a chattel mortgage to secure the payment to the bank of some $7,200 which Matlock then owed to the bank. It was absolute in terms and contained a warranty that Matlock was "the lawful owner of said goods and chattels; that they are free from all encumbrances, except as stated; that I have good right to sell the same as aforesaid," and contained within it an affidavit signed by Matlock in which he stated under oath: "I am the sole owner of the property described in the foregoing bill of sale." The bill of sale was drawn and prepared by the bank and executed by Matlock at the request of the bank. Before plaintiff's note became due and on June 1, 1927, plaintiff was requested by Mr. Vawter, cashier of the bank, to call at the bank. Plaintiff complied with the request and had a conversation with Mr. Vawter in respect to which he testified as follows:

"Why, he called me over and asked me if I knew anything about the Matlock sheep and if I had seen them lately, and I told him I hadn't seen them for awhile, that I had seen them not so very long ago, and so he said he had heard they wasn't being taken care of and that they might have to take them over. So I asked him if he didn't know I had a mortgage on them and he said 'yes' and I asked him what he was going to do if he took the sheep over and he said he would pay the mortgage off if he took the sheep. * * * I told him I was going to leave the next day."

Plaintiff left on the following day and went to Montana and, upon his return several months later, found that the bank had taken over all Matlock's sheep that it could find and had sold and disposed of them, including those covered by his chattel mortgage as well as those claimed by Rhodes, and the bank refused to pay plaintiff's claim or any part thereof.

The testimony further showed that the Rhodes sheep did not belong to Matlock; that Matlock had them in his possession herding them for Rhodes and that at the time of the alleged conversion they had a distinct mark and brand of their own by which they could be readily identified.

The first point urged by defendant is that the description of the mortgaged sheep, as set forth in the mortgage, was so indefinite and uncertain that the mortgage was void. This contention grows out of the fact that all Matlock's sheep, including those mortgaged, had the same mark and brand and this, it is claimed, made the identification of the mortgaged sheep impossible. It will be noted that this objection comes not from a third party having no knowledge of the chattel mortgage but from a bank having notice and knowledge of plaintiff's mortgage. The bill of sale taken by it from Matlock was prepared by an officer of the bank and is in the bank's own language and it contained the recital that "two hundred ten (210) head of ewes subject to chattel mortgage of $1,385 to T. F. Nichols." In accepting this bill of sale, containing that recital, whether it was an absolute sale and transfer to the bank of the sheep or was intended as a chattel mortgage, as now contended for by the bank, the bank accepted it with full notice and knowledge upon its part that 210 head of ewes were transferred to the bank subject to plaintiff's chattel mortgage.

■ The authorities are in conflict upon the question of whether a description of property which constitutes a part of a greater quantity of a like kind is sufficient as against parties having no knowledge or notice of a prior chattel mortgage thereon. This, however, is a question not necessary for decision here for the bank, when it acquired the sheep from Matlock, had actual

notice and knowledge of plaintiff's prior mortgage upon a part thereof and accepted from Matlock an instrument which expressly recited that the title it was then acquiring to the mortgaged part should be subject to the mortgage. Under such circumstances, the description was sufficient and as between the bank and plaintiff the mortgage was not void for uncertainty. See 11 C. J., p. 463.

██ The next point urged by defendant is that the claim of Rhodes against the bank for the conversion of his sheep was not assignable. At common law trover could be maintained only by him who had the right of possession at the time of the conversion and, under this rule, a cause of action for the conversion of chattels was not assignable so as to enable the assignee to sue in his own name: Bowers on The Law of Conversion (1917 Ed.), §§ 429 and 470. This common-law rule that no chose in action was negotiable or assignable has been changed by statute in this state. Section 1-311, Oregon Code 1930, provides:

"No action shall abate by the death, marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue."

Section 5-701 defines the causes of action arising out of an injury that die with the person. The following section [5-702] provides that:

"All other causes of action, by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter."

In view of these statutory enactments, it was held in *Dahms v. Sears,* 13 Or. 47, 58 (11 P. 581):

"* * * Any claim which affects the estate of the party may be assigned, but the rule is otherwise where it arises out of an injury to the person, such as slander, assault and battery, and kindred cases."

And in *Sperry v. Stennick,* 64 Or. 96 (129 P. 130), this court said:

"* * * If, however, the wrongful act is of such a character that the damages resulting therefrom will, upon the death of the person injured, survive to his personal representative, the right of action is assignable."

Again, in *Rorvik v. North Pac. Lumber Co.,* 99 Or. 58, 91 (190 P. 331, 195 P. 163), Mr. Justice HARRIS, in delivering the opinion of the court, said:

"Survivorship is the test of assignability. Any claim which affects the estate of a party, although arising out of tort, may be assigned; but the rule is otherwise where it arises out of an injury to the person."

It is very clear that if plaintiff's assignor had died before assigning his claim, the cause of action would have survived and the action could have been maintained by his personal representative.

■ The learned trial court charged the jury that upon plaintiff's first cause of action it could allow plaintiff such an amount as it should find, under the evidence, would have been a reasonable attorney's fee for the foreclosure of the mortgage if the mortgaged property had not been converted and the mortgage had been foreclosed, and the jury found that $200 was such sum. Defendant contends that the court erred in thus charging the jury. Ordinarily, in tort actions attorney's fees are not recoverable but in *Eade v. First National Bank of Condon,* 117 Or. 47 (242 P. 833, 43 A. L. R. 374), the court distinguished between ordinary tort cases and an action for conversion of mortgaged chattels and held that where a chattel mortgage had been given to secure a note providing for the payment of attorney's fees and the mortgaged chattels, because of the conversion, had been lost or destroyed and the

mortgagee had been deprived of the right to foreclose his mortgage, the mortgagee could recover such sum as he would have been entitled to have recovered if the mortgage had been foreclosed. This contention, therefore, is foreclosed by that decision.

■■ In charging the jury, the learned trial court, after construing the two instruments—plaintiff's prior chattel mortgage and the bill of sale subsequently given by Matlock to the bank, which contained the express recital that it was subject to the plaintiff's mortgage—directed the jury to return a verdict in favor of plaintiff upon his first cause of action for what they should find was the market value at the time of the conversion of 210 head of the average ewes which the bank admitted it had taken and sold and the proceeds of which it had applied upon its own security and limited the amount which plaintiff could recover upon that cause of action to the amount then due on the note secured by the mortgage. This direction it is contended was error. It was admitted upon the trial that the bank had taken the Matlock sheep and had sold and disposed of them and had applied the proceeds of the sale to the satisfaction of its own claims and demands against Matlock and that among the sheep so taken were those mortgaged to plaintiff. In view of the express recital contained in the instrument executed by Matlock to the bank and accepted by the bank that the bill of sale then given and the title thereby conferred were subject to plaintiff's mortgage, whether the bill of sale was in the nature of a chattel mortgage or otherwise, the bank was estopped to deny the validity of plaintiff's mortgage and, having admitted that it took the mortgaged property with full knowledge of plaintiff's lien upon the sheep and that

its rights and interest in the sheep were subject to the mortgage, we think the direction given by the court to the jury was proper. It is a settled principle of law that a grantee is estopped to deny the validity of any mortgage to which his deed recites that the conveyance to him is subject: *Johnson v. Thompson*, 129 Mass. 398, and cases there cited. The rule as to a junior mortgagee whose mortgage is made expressly subject to a prior mortgage is the same. In such case, the junior mortgagee is estopped to deny the validity of the prior mortgage: 21 C. J., p. 1072. There were no facts proven to take the case out of the operation of the rule.

Finding no error, the judgment appealed from must be affirmed.

BEAN, C. J., ROSSMAN and KELLY, JJ., concur.