Submitted on record and briefs June 2, 2000, reversed and remanded June 6, 2001

## Evelyn GREGORY,
## Donald Gregory, and Roger Weidner,
### *Appellants,*

*v.*

## Robert S. LOVLIEN,
### *Respondent.*

## 98-CV-0048; A107198

26 P3d 180

Evelyn Gregory, Donald Gregory, and Roger Weidner filed the briefs *pro se*.

Andrew C. Balyeat and Merrill O'Sullivan, LLP, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

KISTLER, J.

**KISTLER, J.**

Plaintiffs brought this action to recover for alleged legal malpractice, stating in part that two of the plaintiffs had assigned their claims to the third. Defendant moved to dismiss plaintiffs' complaint on the ground that legal malpractice claims may not be assigned. The trial court granted defendant's motion and entered judgment against plaintiffs. On plaintiffs' appeal, we reverse and remand.

Because this case arises on defendant's motion to dismiss, we take the facts alleged in plaintiffs' second amended complaint as true. Donald and Evelyn Gregory purchased three duplexes in 1994. When problems arose with the purchase, the Gregorys asked defendant, an attorney, to represent them. The Gregorys became dissatisfied with defendant's representation, and the Gregorys and Roger Weidner filed a malpractice action against defendant. The complaint in the malpractice action does not allege that Weidner entered into an attorney-client relationship with defendant or that defendant owed Weidner any duty that would permit him to bring a malpractice claim against defendant. *See Lord v. Parisi*, 172 Or App 271, 279-80, 19 P3d 358 (2001). The complaint does allege that the Gregorys and Weidner now own the duplexes together and that the Gregorys have assigned all their interest in their malpractice claim against defendant to Weidner.

Defendant moved to dismiss the second amended complaint, arguing that: (1) legal malpractice claims are not assignable under Oregon law; (2) even if legal malpractice claims are assignable under Oregon law, allowing the assignment in this case would effectively permit Weidner, a disbarred attorney, to engage in the unauthorized practice of law; and (3) the assignment was a sham. The trial court agreed; it ruled that "a cause of action for legal malpractice is not assignable" and that, in any event, "the assignment in the case at bar is void since such an assignment violates public policy." The court accordingly granted defendant's motion and, when the Gregorys declined to replead without Weidner, entered judgment against them.

On appeal, plaintiffs argue that the trial court's ruling is inconsistent with *Collins v. Fitzwater*, 277 Or 401, 560 P2d 1074 (1977), *overruled on other grounds by Lancaster v. Royal Ins. Co. of America*, 302 Or 62, 726 P2d 371 (1986).[1] Defendant responds that a legal malpractice claim "sounds in tort for injury to the person" and that tort actions for personal injuries are not assignable in Oregon. He argues alternatively that, even if a legal malpractice claim seeks to remedy an injury to property rather than an injury to one's person, we should still follow the majority rule holding that legal malpractice claims may not be assigned. Finally, he argues that the circumstances of this case make an assignment inappropriate.

We begin with plaintiffs' argument that a legal malpractice claim may not be assigned because it is a personal injury claim. Initially, the Oregon Supreme Court looked to whether a claim would survive a tort victim's death to determine whether the claim could be assigned. *See Sperry v. Stennick*, 64 Or 96, 101, 129 P 130 (1913); *see also Nordling v. Johnston*, 205 Or 315, 283 P2d 994, *reh'g den* 205 Or 315, 287 P2d 420 (1955); *Nichols v. Jackson County Bank*, 136 Or 302, 298 P 908 (1931). The court explained in *Sperry* that "[i]f * * * the damages resulting [from the wrongful act] will, upon the death of the person injured, survive to his personal representative, the right of action is assignable." 64 Or at 101; *see also Dahms v. Sears*, 13 Or 47, 57-58, 11 P 891 (1886) (when a cause of action affects a party's estate it is generally assignable).[2] As part of the common law, the courts had identified specific claims that did and did not survive, although

---

[1] Plaintiffs also assign error to the trial court's ruling denying their summary judgment motion, which they filed before the court ruled on defendant's motion to dismiss. Even if we may review that ruling, *see York v. Bailey*, 159 Or App 341, 345, 976 P2d 1181, *rev den* 329 Or 287 (1999), there were disputed issues of material fact that precluded summary judgment.

[2] Justice Story explained the relationship between assignability and survivability:

"In general, it may be affirmed that mere personal torts, which die with the party and do not survive to his personal representative, are not capable of passing by assignment; and that vested rights *ad rem* and *in re*, possibilities coupled with an interest, and claims growing out of and adhering to property, may pass by assignment."

*Comegys v. Vasse*, 1 Peters (26 US) 193, 213, 7 L Ed 108 (1828).

the distinctions that the courts drew among claims were not always consistent. *See* William L. Prosser, *Law of Torts* 921-22 (3d ed 1964).

As Prosser observed, "[a]part from historical accident, no rhyme or reason is discernible in these [common-law] distinctions [on whether a claim survives], and they are now very much altered by statute." *See id.* at 922. In the 1960s, the Oregon courts accordingly began to question whether a strict link between common-law notions of survivorship and assignability should be maintained. Justice O'Connell, writing for the majority in *Geertz v. State Farm Fire*, 253 Or 307, 309-10, 451 P2d 860 (1969), reasoned:

> "Generally, it is said that a claim which will not survive the plaintiff's death is not assignable. The reason for this equation between survivorship and assignability is seldom explained. One explanation is that if a claim is so personal that it will not survive it is therefore so personal that it cannot be assigned. It has also been said that the rule developed to avoid maintenance. There are other possible explanations found in the historical development of the survival of tort claims. Whatever reasons there may be for prohibiting the assignment of personal injury claims after an accident, we do not think they apply to a situation where the claim is transferred pursuant to an indemnity contract between insurer and insured. If there are evils that flow from such contracts, we are not aware of them."

(Footnotes omitted.) The court accordingly recognized that personal injury claims could be assigned in limited situations even though it had previously held that personal injury claims do not survive. *Id.*; *compare Rorvik v. North Pac. Lumber Co.*, 99 Or 58, 90-95, 195 P 163 (1921). Rather than adhere to an absolute prohibition on assignments of personal injury claims, the court asked whether the public policy concerns that the rule against assignments was intended to prevent were present.

Similarly, in *Groce v. Fidelity General Insurance*, 252 Or 296, 302-04, 448 P2d 554 (1968), the plaintiff sought to sue the defendant's insurer after the defendant assigned his bad-faith claim against his insurer to the plaintiff. The court reasoned that, even if the insurer's breach of its obligation of good faith were tortious, "the cause of action arising

from such breach is one that affects the insured in his property, as distinguished from his person, and so ought to be as capable of assignment and survival as any other contract right." *Id.* at 302-03. Having concluded that there was no general bar to the assignment, the court considered whether the circumstances of that case presented any of the dangers, such as champerty and maintenance, that justified a rule against assignments and concluded that it did not. *Id.* at 303-04. The court followed a similar course in *Johnson v. Bergstrom*, 284 Or 343, 347, 587 P2d 71 (1978), explaining that a claim for interference with contract rights could be assigned because it related to a property rather than a personal interest.[3]

■■ With that background in mind, we turn to the question whether a claim for legal malpractice, although tortious, "is one that affects [a lawyer's client] in his [or her] property, as distinguished from his [or her] person." *See Groce*, 252 Or at 302. The court has recognized that the damages arising from legal malpractice claims are typically based on "purely economic loss." *See Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987); *accord Lord*, 172 Or App at 276; *Roberts v. Fearey*, 162 Or App 546, 550, 986 P2d 690 (1999). Here, the Gregorys sued defendant to recover for an economic loss allegedly caused by his actions. Their malpractice claim more closely resembles claims that are based on injuries to one's property and therefore falls within the general class of tort claims that may be assigned. *See Johnson*, 284 Or at 347; *Groce*, 252 Or at 302-03; *Hedlund Mfg. v. Weiser, Stapler &*

---

[3] In 1969, the legislature passed a statute providing that all causes of action survive to the personal representative. *See Johnson*, 284 Or at 347. The court explained that it need not decide whether that legislative policy change meant that a personal injury claim could now be assigned. *Id.* It reasoned:

"Regardless of the proper basis for the rule that actions for injury to the person are not ordinarily assignable, the rights acquired by plaintiffs under the assignment involved in this case were of a different nature. In our view, the tort of interference with contract rights is a tort relating to property interest, rather than a personal interest, and the assignment of such a tort claim is not void as against public policy. The reasons of policy against the assignment of personal injury claims have little relevance with respect to property damage claims."

*Id.* (footnotes omitted). Similarly, in this case, because we conclude that the claim at issue here is property related, we need not decide whether personal injury claims may now be assigned.

*Spivak*, 539 A2d 357, 359, 517 Pa 522 (1988) (a legal malpractice claim involves rights more akin to property rights than personal or private rights because the claim arises out of negligence and breach of contract and the injury is "purely pecuniary").[4]

Defendant advances a second argument. He argues that, even if an attorney's malpractice affects a client's property interests, we still should follow the "majority of jurisdictions across the country [that] have prohibited the assignment of legal malpractice claims," *see, e.g., Goodley v. Wank and Wank, Inc.*, 62 Cal App 3d 389, 133 Cal Rptr 83, 87 (1976); *National Union Fire Ins. Co. v. Salter*, 717 So 2d 141 (Fla App 1998), *rev den* 727 So 2d 908 (1999); *Kiley v. Jennings, Strouss & Salmon*, 927 P2d 796 (Ariz App 1996), and reject the minority rationale, *see, e.g., New Hampshire Ins. Co., Inc. v. McCann*, 429 Mass 202, 707 NE2d 332 (1999); *Richter v. Analex Corp.*, 940 F Supp 353 (DDC 1996); *Hedlund Mfg.*, 539 A2d at 359; *American Hemisphere Marine Agencies, Inc. v. Kreis*, 40 Misc 2d 1090, 244 NYS2d 602 (1963).

Plaintiffs counter that the Oregon Supreme Court's decision in *Collins* establishes that Oregon has already adopted the minority rule. Plaintiffs read too much into *Collins*. That case involved a dispute among the directors of an Oregon company who had been held liable for the unregistered issuance of securities in violation of Oregon's Blue Sky

---

[1] Defendant argues that *U.S. Nat'l Bank v. Davies*, 274 Or 663, 548 P2d 966 (1976), leads to a different result. The question, however, in *Davies* was whether the statute of limitations set out in ORS 12.080(4) or in ORS 12.110(1) applied to legal malpractice claims. The court held that the statute of limitations set out in ORS 12.080(4) does not apply because that statute "contemplates some direct, physical injury to personal property." 274 Or at 665. The fact that legal malpractice does not cause a "direct, physical injury to personal property" does not mean that it does not affect a person's property interests. The bad-faith claim in *Groce* did not seek to recover for a "direct, physical injury to personal property," but the court still held that it "affect[ed] the insured in his property, as distinguished from his person." *Groce*, 252 Or at 303-04. Conversely, the fact that the *Davies* court held that the statute of limitations in ORS 12.110(1) applies to a legal malpractice claim does not advance defendant's argument. That statute of limitations applies to an action "for any injury to the person or rights of another, not arising out of contract." By its terms, ORS 12.110(1) is not limited to personal injury claims but also applies when other rights are injured. *Davies* provides no basis for saying that the malpractice claim affected the Gregorys' property interests differently from the way that the bad-faith claim affected the insured's property interests in *Groce*.

Law. *Collins*, 277 Or at 403-04. One of the "lay" directors who had been held liable assigned his interests in a legal malpractice claim and an indemnity claim against the defendant, a director who was also the corporate attorney.

The court held initially that the plaintiffs (the assignees) had stated a claim for both legal malpractice and indemnity against the defendant. *Id.* at 406-07.[5] It then turned to the defendant's argument that the assignment violated public policy. *Id.* at 407. The defendant did not argue that legal malpractice claims are not generally assignable under Oregon law; rather, he "admit[ted] that actions for legal malpractice are normally fully assignable." *Id.* The defendant argued instead that a public policy specific to the corporation statutes precluded the assignment in that case. The court did not question the defendant's admission that legal malpractice actions are normally fully assignable but disagreed with his argument that the statutes governing corporations prevented one director from assigning a claim against another director. It accordingly permitted the assignees to bring the action.

Plaintiffs argue that the single statement from *Collins*, which we have quoted above, demonstrates conclusively that Oregon has adopted the minority position and permits former clients to assign legal malpractice claims. We hesitate to attribute so much significance to the court's failure to question a party's admission. In our view, the court's treatment of the issue in *Collins* is not conclusive, and we turn to the question whether we should adopt the majority or the minority position on this issue.

The cases that hold that legal malpractice claims may never be assigned generally cite five concerns: (1) the fear of creating a market in malpractice; (2) the risk of collusion that would exist between the assignor and assignee; (3) the concern that the increased possibility of assignment may deter attorneys from zealously advocating their client's interests; (4) the concern that assignments would increase

---

[5] Similarly, the trial court had found that the defendant was negligent in failing to determine whether the securities were required to be registered and in failing to advise the other members of the board that they could incur liability if the unregistered securities were sold. *Id.* at 404.

the frequency with which legal malpractice claims are brought, thereby providing a disincentive to supplying legal services to those who need them; and (5) the risk that, if legal malpractice claims were assignable as part of a settlement, a party could sue the adverse party's attorney, thereby threatening attorney-client confidentiality. *See City of Garland v. Booth*, 971 SW2d 631 (Tex App 1998). The underlying theme running through these concerns is the perceived threat to the attorney-client relationship that would accompany the assignments of legal malpractice claims.

A minority of courts have declined to adopt an absolute prohibition on assigning malpractice claims because those concerns are not present in every case. *See, e.g., New Hampshire Ins. Co., Inc.*, 707 NE2d at 336-37; *Thurston v. Continental Cas. Co.*, 567 A2d 922, 923 (Me 1989); *Richter*, 940 F Supp at 357-58.[6] An assignment of a malpractice claim by one corporation to another as part of a merger or acquisition does not present these concerns. *See Richter*, 940 F Supp at 357-58. The same is true when the defendant in the underlying action assigns its malpractice claim against its attorney to the plaintiff as part of a settlement. *See New Hampshire Ins. Co., Inc.*, 707 NE2d at 337; *Thurston*, 567 A2d at 923; *compare Groce*, 252 Or at 304-05 (permitting the defendant in the underlying action to assign its bad faith claim against its insurer to the plaintiff in the underlying action as part of a settlement).[7]

---

[6] We note, as these courts have, that some of the concerns that typically are cited appear overstated. The concern that the legal profession will be demeaned because attorneys will be forced to argue against the position they previously asserted on behalf of their clients is presented regardless of whether the client or the client's assignee brings the malpractice action. Similarly, the risk that a future assignment of the client's malpractice claim to an adversary will temper an attorney's present representation of his or her client seems remote at best. It may ensure that the attorney provides better representation. Finally, the concern that the attorney will be forced to violate the attorney-client privilege is diminished when the former client has voluntarily assigned the claim; presumably, the client decided to waive the privilege when he or she agreed to the assignment. Other concerns are legitimate and may be present in individual cases, but they are not present in every case.

[7] The court explained in *Groce*:

"To the argument that the assignment of claims in cases of this kind breeds champerty and maintenance, it is sufficient to observe that for many years at common law the bona fide assignee of a chose in action has not been deemed guilty of champerty. Champerty is the intermeddling of a stranger in the litigation of another, for profit, and maintenance is the financing of such

The Maine Supreme Court summarized the rationale behind allowing assignments in these types of cases:

> "[T]here is no reason to prohibit the assignment of a legal malpractice claim in a situation such as this. We are not confronted with the establishment of a general market for such claims; this assignee has an intimate connection with the underlying lawsuit * * *. A legal malpractice claim is not for personal injury, but for economic harm. The argument that legal services are personal and involve confidential attorney-client relationships does not justify preventing a client like [this one] from realizing the value of its malpractice claim in what may be the most efficient way possible, namely, its assignment to someone else with a clear interest in the claim who also has the time, energy and resources to bring the suit."

*Thurston*, 567 A2d at 923 (citations omitted); *see also Richter*, 940 F Supp at 357-58; *New Hampshire Ins. Co., Inc.*, 707 NE2d at 336-37.

■   The contrary rule that defendant proposes would bar assignment of malpractice claims even when the assignee has a bona fide interest in the claim and when none of the evils that may flow from such an assignment is present. In *Groce, Geertz,* and *Johnson,* the Oregon Supreme Court declined to adopt a broad prohibition on assignments but looked instead to the circumstances of the individual case. Those decisions counsel against adopting the absolute prohibition on assignment of malpractice claims that defendant urges. We also note that, even though the Supreme Court's acceptance of the defendant's admission in *Collins* does not conclusively establish that legal malpractice claims may be assigned in Oregon, it does point in that direction. We accordingly agree with the Massachusetts Supreme Court that not "every voluntary assignment of a legal malpractice claim should be barred as a matter of law." *New Hampshire Ins. Co., Inc.*, 707 NE2d at 337.

---

intermeddling. A judgment creditor of an insolvent tortfeasor can hardly be called an intermeddling stranger to litigation necessary to pay his judgment."
252 Or at 304-05 (citation omitted).

■ Defendant argues finally that, even if no prohibition against assigning all legal malpractice claims exists, the specific assignment in this case should still be declared void as against public policy. Defendant points out that Weidner has admitted that he is a disbarred attorney. Defendant argues that allowing the assignment in this case would effectively permit Weidner to engage in the unauthorized practice of law in violation of the public policy expressed in ORS 9.160. As defendant observes, the statements in plaintiffs' brief support that understanding of Weidner's relationship with the Gregorys.

■ The difficulty with defendant's position is that this appeal comes to us on a motion to dismiss. We cannot base our decision on statements in plaintiffs' brief; rather, we are limited to the allegations in the second amended complaint. *See Business Men's Service Co. v. Union Gospel Ministries*, 120 Or App 228, 229, 852 P2d 199 (1993); *O'Gara v. Kaufman*, 81 Or App 499, 503, 726 P2d 403 (1986). In light of Weidner's alleged ownership interest in the duplexes and the requirement that we draw all reasonable inferences in plaintiffs' favor, we cannot say, on the record before us, that Weidner has no *bona fide* interest in the Gregorys' malpractice claim or that giving effect to the assignment would necessarily permit Weidner to engage in the unauthorized practice of law.

In the procedural posture in which this appeal arises, we cannot affirm the trial court's judgment for the case-specific reasons that defendant urges, and we do not agree with defendant's argument that every assignment of a legal malpractice claim should be barred as a matter of law. We accordingly reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.