MAT–SU REGIONAL MEDICAL
CENTER, LLC, Appellant,

v.

Brandi M. BURKHEAD and
Meg J. Voss, Appellees.

Mat–Su Regional Medical Center,
LLC, Appellant,

v.

Meg J. Voss, Appellee.

Nos. S–13010, S–13326.

Supreme Court of Alaska.

Feb. 19, 2010.

Rehearing Denied March 26, 2010.

Peter J. Aschenbrenner, Aschenbrenner Law Offices, Inc., Fairbanks, for Appellant.

Frank J. Schlehofer, Azar & Schlehofer, P.C., Anchorage, for Appellee Brandi M. Burkhead.

Kimberlee A. Colbo, Hughes Pfiffner Gorski Seedorf & Odsen, LLC, for Appellee Meg J. Voss.

Before: CARPENETI, Chief Justice, EASTAUGH, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

These two appeals, consolidated for decision, raise common questions about an attempt by Mat–Su Regional Medical Center (Mat–Su) to assert a direct claim against a motor vehicle driver who allegedly injured Brandi Burkhead, to whom Mat–Su then provided medical services. At Mat–Su's request, Burkhead assigned to Mat–Su all her rights and claims against Meg Voss, the alleged tortfeasor. In S–13010 we consider

whether it was error to deny Mat–Su's motion to intervene in Burkhead's personal injury lawsuit against Voss. And in S–13326 we consider whether Mat–Su may bring a direct action, based on Burkhead's assignment of her personal injury claim, against Voss. We conclude that it may not, and that Mat–Su's only remedy here is provided by the medical lien statute, AS 34.35.475. We therefore affirm Superior Court Judge Vanessa White's order denying Mat–Su's motion to intervene in Burkhead's personal injury lawsuit against Voss. We likewise affirm Superior Court Judge Kari Kristiansen's judgment dismissing Mat–Su's direct personal injury claim against Voss.

## II. FACTS AND PROCEEDINGS

### A. The Accident

Brandi Burkhead was injured in a vehicular collision near Palmer in July 2007. Burkhead was admitted to Mat–Su Regional Medical Center, where she received emergency and other medical services. Mat–Su alleges that the services had a value of $301,863.59.

During her treatment at Mat–Su, Burkhead allegedly signed two "Consent: Authorization, Assignment, and Acknowledgment" forms in which she ostensibly assigned to Mat–Su "all rights to or claims for payment against third parties" for the reasonable value of medical services rendered.[1] Mat–Su also recorded a health care lien against Burkhead for $301,863.59 under AS 34.35.450–.482.

### B. Mat–Su's Motion To Intervene in Burkhead's Suit Against Voss

In August 2007 Burkhead began a personal injury lawsuit against Meg Voss, the driver of the other vehicle involved in the collision.

In November of that year Mat–Su moved to intervene in Burkhead's lawsuit against Voss and to obtain co-plaintiff status.[2] Mat–Su claimed its status as assignee, not as a lienor, was the "sole legal basis" for intervening. Mat–Su argued that Burkhead's assignment to Mat–Su of her right to recover medical expenses "reshaped real party in interest status of her creditor ... for the purpose of prosecuting a claim for recovery of those expenses as damages." Mat–Su contended that it could intervene both permissively and as a matter of right.[3]

Both Burkhead and Voss objected to Mat–Su's motion to intervene. Superior Court Judge Vanessa White denied Mat–Su's motion in January 2008.

### C. Mat–Su's Direct Action Against Voss

In December 2007 Mat–Su brought a separate lawsuit against Voss to recover the reasonable value of the medical services Mat–Su provided to Burkhead. Voss moved for summary judgment, arguing in part that Alaska's lien statute, AS 34.35.475, provided Mat–Su's exclusive remedy against Voss. Voss also contended that the alleged assignment was unenforceable as a matter of law because Burkhead was incompetent and under duress when she agreed to the assignment.

Mat–Su moved for an Alaska Civil Rule 56(f) continuance that would have allowed Mat–Su an extra sixty days to file a complete opposition to Voss's summary judgment motion. Mat–Su argued that it needed the additional time "to conduct depositions and further discovery to develop its position that the Consent: Assignment forms are valid and enforceable against Ms. Voss."

Voss opposed Mat–Su's continuance motion, arguing that determining the validity of

---

1. Both consent forms contained the same assignment provision, which stated:

 The undersigned patient/authorized person, having been informed by my treating physician ... of the treatment and procedures considered necessary or desirable, hereby: ...
 3. ASSIGNS to Valley Hospital all rights to or claims for payment against third parties and DIRECTS that payment from such third parties be made directly to the Hospital....

Mat–Su contends that these forms only assigned rights to the extent of the reasonable value of its services. These appeals do not turn on whether the assignments were actually so limited.

2. Mat–Su had moved to intervene in September 2007 but withdrew that motion.

3. Alaska Civil Rule 24(a) governs intervention as of right. Civil Rule 24(b) governs permissive intervention.

the assignments was "utterly irrelevant to the primary issue: whether, as a matter of law, the lien enforcement procedure is Mat–Su's exclusive remedy." Mat–Su replied that the validity of the assignment was relevant because Voss had claimed in her summary judgment motion that the assignment was unenforceable.

Superior Court Judge Kari Kristiansen held a hearing on Mat–Su's Rule 56(f) continuance motion in May 2008. Voss's attorney stated during the hearing that, for the purposes of deciding whether AS 34.35.475(b) provided Mat–Su's exclusive remedy, the court could "assume for argument sake that the assignment that was signed by Ms. Burkhead was valid." The court asked Mat–Su's attorney whether further discovery was necessary to respond to Voss's exclusive remedy argument. Mat–Su's attorney responded: "No, I don't need further discovery per se to respond to the exclusive remedy argument."

The court then denied Mat–Su's motion for a continuance and ordered Mat–Su to respond to Voss's summary judgment motion within ten days. The court stated that it would grant Mat–Su's request to depose Burkhead but questioned the relevance of a deposition to Voss's motion for summary judgment on the exclusive remedy issue.

Mat–Su filed a timely opposition to Voss's summary judgment motion. The court held a hearing on Voss's motion in August 2008. The court ultimately agreed with Voss that the lien enforcement procedure found in AS 34.35.475(b) was Mat–Su's exclusive remedy, and granted Voss's motion for summary judgment on August 12, 2008.

The next day, Mat–Su filed a motion for summary judgment on the affirmative defenses Voss had raised in her answer. Voss filed a notice stating that she would not file an opposition because Mat–Su's summary judgment motion was moot. Judge Kristiansen entered final judgment for Voss on Octo-

ber 6, 2008, without ruling on Mat–Su's summary judgment motion.

### D. Mat–Su's Appeals

In S–13010 Mat–Su appeals Judge White's decision denying Mat–Su's intervention motion in Burkhead's personal injury suit against Voss. In S–13326 Mat–Su appeals Judge Kristiansen's decision granting summary judgment against Mat–Su in its direct action against Voss. We heard oral argument in Mat–Su's appeal of Judge White's decision in February 2009. After oral argument Mat–Su moved to consolidate that appeal with its then-pending appeal of Judge Kristiansen's decision. We conditionally granted Mat–Su's motion for the purposes of considering and resolving the two appeals, and heard oral argument in the appeal of Judge Kristiansen's decision in September 2009.

## III. STANDARD OF REVIEW

### A. Denial of Intervention in Burkhead's Action Against Voss

■ We apply our independent judgment in determining whether a superior court's denial of a motion to intervene as a matter of right was in error if timeliness is not at issue, the facts relevant to intervention are undisputed, and only questions of law are posed.[4]

■ We review a superior court's denial of a motion for permissive intervention for abuse of discretion.[5]

### B. Grant of Summary Judgment and Entry of Final Order in Mat–Su's Action Against Voss

■ "We review grants of summary judgment de novo, drawing all factual inferences in favor of, and viewing the facts in the light most favorable to the non-prevailing party."[6] We affirm grants of summary judgment if there are no genuine issues of

---

4. *Harvey v. Cook,* 172 P.3d 794, 798 (Alaska 2007) (citing *Alaskans for a Common Language, Inc. v. Kritz,* 3 P.3d 906, 912 (Alaska 2000)).

5. *Id.* (citing *State v. Weidner,* 684 P.2d 103, 114 (Alaska 1984)).

6. *Rockstad v. Erikson,* 113 P.3d 1215, 1219 (Alaska 2005) (citing *Ellis v. City of Valdez,* 686 P.2d 700, 702 (Alaska 1984)).

material fact and the prevailing party "was entitled to judgment as a matter of law." [7]

■ "We review for abuse of discretion a decision to deny a continuance requested under Alaska Civil Rule 56(f)." [8]

## IV. DISCUSSION

### A. Whether It Was Error To Grant Summary Judgment to Voss and Enter Final Judgment of Dismissal

Although the denial of Mat–Su's attempt to intervene in Burkhead's suit was appealed and argued first, we discuss the issues raised by the appeal in Mat–Su's direct action against Voss first because they dispose of both appeals.

#### 1. Whether the statutory lien procedure was Mat–Su's exclusive remedy against Voss

■ Mat–Su argues that Judge Kristiansen erred in concluding that Mat–Su's exclusive remedy was the statutory lien procedure set out in AS 34.35.475(b). Mat–Su contends that it does not need statutory authorization to obtain common law contract-based assignment rights, but that the "relevant statutory framework" nevertheless permits it to proceed directly against Voss.

According to Mat–Su, the "relevant statutory framework" includes a federal bankruptcy statute,[9] the Alaska Exemptions Act,[10] the Employee Retirement Income Security Act (ERISA),[11] Alaska's treatment of insurance companies' subrogation rights,[12] state Medicaid law,[13] and federal Medicare law.[14] It argues that those bodies of law provide instructive, analogous examples in which creditors, providers of governmental services, or possessors of subrogation rights may pursue claims directly against third-party tortfeasors.

Voss responds that the hospital lien enforcement procedure set out in AS 34.35.450–.482 provides Mat–Su's exclusive remedy against Voss and that we therefore do not need to consider "the questionably relevant extra-territorial legal authority discussed at length by Mat–Su." In the appeal arising out of Burkhead's personal injury action against Voss, Burkhead likewise argues that the statutory lien procedure provides Mat–Su's exclusive remedy against Voss. Burkhead argues that permitting Mat–Su to proceed directly against Voss would "eviscerate the careful tripartite balance" our legislature established between the "patient/plaintiff, health care provider, and tortfeasor/insurer."

Per AS 34.35.450(a), a hospital that "furnishes service to a person with a traumatic injury has a lien upon any sum awarded to the injured person ... to the extent of the amount due the hospital." [15] The hospital may foreclose or sue to enforce its lien within one year of filing [16] and may also, in certain very limited situations, bring an action against a third party responsible for the damages.[17] If the responsible third party

---

7. *Id.*

8. *Hymes v. Deramus*, 119 P.3d 963, 965 (Alaska 2005) (quoting *Kessey v. Frontier Lodge, Inc.*, 42 P.3d 1060, 1062 (Alaska 2002)).

9. 11 U.S.C. § 522 (2006).

10. AS 09.38.010–.510.

11. 29 U.S.C. §§ 1001–1461 (2006).

12. *See Ruggles ex rel. Mayer v. Grow*, 984 P.2d 509 (Alaska 1999).

13. AS 47.05.070.

14. 42 U.S.C. § 1395 (2006).

15. AS 34.35.450 provides in part:

(a) An operator of a hospital in the state, a licensed special nurse in a hospital in the state, or a physician who furnishes service to a person who has a traumatic injury has a lien upon any sum awarded to the injured person or the personal representative of the injured person by judgment or obtained by a settlement or compromise to the extent of the amount due the hospital, nurse, or physician for the reasonable value of the service furnished before the date of judgment, settlement, or compromise, together with costs and reasonable attorney fees that the court allows, incurred in the enforcement of the lien.

16. AS 34.35.480.

17. AS 34.35.475 gives a hospital a cause of action against a person who, despite notice of the hospital's lien, pays damages to the hospital's injured patient. It provides:

has notice of the lien, pays the injured party, and does not pay the hospital, the hospital has a cause of action against the third party for 180 days from the date of payment.[18]

As Mat–Su observes, any exclusivity of this statutory lien remedy is not "self-evident" from either the text or the legislative history of AS 34.35.475. Mat–Su also correctly observes that the mere existence of "statutory lien rights" does not automatically extinguish common law rights or require "explicit statutory permission to acquire additional contract rights." [19]

But it is significant that the legislature chose to create a limited lien remedy rather than a statutory assignment or subrogation remedy like those it explicitly adopted in other contexts. In workers' compensation cases, for example, an employee's acceptance of an award of compensation acts as a condi-

tional assignment to the employer of all rights to recover damages from liable third parties.[20] And AS 47.05.070(b) grants the Department of Health and Social Services subrogation rights against insurance payments and other recoveries by recipients of Medicaid benefits.[21] The legislature could have adopted a similar remedy for health care providers but opted instead for the lien scheme.

Moreover, although we have never expressly held that assignments of personal injury claims are invalid as a matter of public policy, we have long recognized a "general rule of non-assignability of claims for personal injury" under Alaska law.[22] We have identified limited exceptions to this general rule—the validity of the reassignment of a wrongful death claim to the estate of the decedent, for example [23]—but we have never

---

(a) A person or insurer is liable to a hospital, physician, or nurse, in the amount that the hospital, physician, or nurse is entitled to receive, for 180 days after the date of a payment to the injured person, the heirs of the injured person, personal representatives, or the attorney of them, when the person or insurer:

(1) receives a copy of notice of lien, or the lien is recorded as provided in AS 34.35.460 and 34.35.465;

(2) makes the payment after receipt of notice or the recording of the lien as compensation for the injury suffered; and

(3) does not pay the hospital, physician, or the licensed special nurse for the reasonable value of the services rendered to the injured person and claimed in the notice of lien, or so much of the value of the services as can be satisfied out of a judgment, settlement, or compromise, after paying the attorney fees, costs, and expenses incurred in connection with it.

(b) The hospital, physician, or nurse has a cause of action, during the 180 days, against the person or insurer.

**18.** *Id.*

**19.** *Young v. Embley*, 143 P.3d 936, 947 (Alaska 2006) (observing that "the provision of statutory remedies does not necessarily preclude traditional remedies").

**20.** AS 23.30.015, which addresses the effect of third-party liability on workers' compensation benefits, provides in relevant part:

(b) Acceptance of compensation under an award in a compensation order filed by the board operates as an assignment to the employer of all rights of the person entitled to

compensation and the personal representative of a deceased employee to recover damages from the third person unless the person or representative entitled to compensation commences an action against the third person within one year after an award.

**21.** AS 47.05.070(b) provides:

When the [Department of Health and Social Services] provides or pays for medical assistance for injury or illness under this title, the department is subrogated to not more than the part of an insurance payment or other recovery by the recipient that is for medical expenses provided by the department. Notwithstanding the assertion of any action or claim by the recipient of medical assistance, the department may bring an action in the superior court against an alleged third-party payor to recover an amount subrogated to the department for medical assistance provided on behalf of a recipient.

**22.** *Croxton v. Crowley Mar. Corp.*, 758 P.2d 97, 99 (Alaska 1988) (quoting *Caldwell v. Ogden Sea Trans.*, 618 F.2d 1037, 1048 (4th Cir.1980)); *see also Wichman v. Benner*, 948 P.2d 484, 488 (Alaska 1997) (recognizing "general rule prohibiting assignment of tort actions for personal injuries"); *Deal v. Kearney*, 851 P.2d 1353, 1355 (Alaska 1993) (recognizing "common law prohibition against assignment of personal injury claims").

**23.** *Croxton*, 758 P.2d at 99; *see also Wichman*, 948 P.2d at 487–88 (holding employer's workers' compensation carrier could assign its statutory right of reimbursement to insurance carrier); *Deal*, 851 P.2d at 1356 (holding hospital's assignment of its claims for indemnity, subrogation,

recognized an exception for health care providers.

The absence of exclusive remedy language in the lien statute is therefore unsurprising. The legislature, in fashioning the lien remedy in AS 34.35.475, had no reason to think health care providers in Alaska had any ability to obtain or enforce personal injury assignments from their patients. Because it had no reason to think any such remedies were available or would become available to health care providers in Alaska, the legislature had no reason to expressly state that the statutory lien remedy was in lieu of contract-based assignment remedies or other possible imaginary remedies.

But because the legislature did not explicitly or implicitly foreclose a health care provider's direct claims against a tortfeasor based on its patient's assignment of tort claims, it is necessary to consider whether such assignments are valid in Alaska.[24]

As discussed above, we have long recognized a "general rule of non-assignability of claims for personal injury" under Alaska law.[25] The majority of jurisdictions around the country have similarly declined to recognize the validity of assignments of tort claims for personal injury,[26] although some states do allow personal injury claims to be assigned.[27]

Mat–Su argues that Alaska law does not prohibit the assignment of personal injury claims, and notes that we have never held such an assignment invalid as against public policy. Mat–Su also argues that any general rule prohibiting the assignment of personal injury claims would not apply to it because it is required to provide emergency medical treatment to patients under the Emergency Medical Treatment and Active Labor Act.[28] Mat–Su suggests that, as such a provider, it is not a stranger to its patients' personal injury lawsuits for the purposes of champerty, and it has a greater need than other health care providers to obtain assignments of personal injury claims.

Voss argues that such assignments are "contrary to law and unenforceable as a matter of public policy." She also argues that permitting health care providers to obtain assignments of personal injury claims from their patients would subject defendants to multiple lawsuits, in which there would be a "substantial risk of inconsistent results," and would potentially prevent settlements with tort victims. Burkhead suggests that permitting such assignments might also harm patients' interests in pursuing personal injury claims.

Nothing Mat–Su argues persuades us that we should reexamine what we said about such assignments and recognize their validity. We think the assignment of personal injury claims is socially problematic given the potential for overreaching when injured assignees bargain away some or all of their rights under the equivalent of at least economic, if not physical or mental, duress.[29]

---

and contribution against individual doctor to patient did not violate public policy because claims did not involve a "personal injury").

24. It is not surprising that the legislature did not explicitly or implicitly foreclose the assignment of personal injury tort claims; as discussed above, it would have had no reason to think such assignments were available.

25. See note 22.

26. See, e.g., Pony v. County of Los Angeles, 433 F.3d 1138, 1143 (9th Cir.2006) ("The right to sue in tort for personal injury is non-assignable under California law."); Gregory v. Lovlien, 174 Or.App. 483, 26 P.3d 180, 182 n. 3 (2001) (" 'The reasons of policy against the assignment of personal injury claims have little relevance with respect to property damage claims.' ... [B]ecause we conclude that the claim at issue here is property related, we need not decide whether

personal injury claims may now be assigned.") (internal citations omitted). See generally R.D. Hursh, Annotation, Assignability of Claim for Personal Injury or Death, 40 A.L.R.2d 500 (1955).

27. See, e.g., Kithcart v. Kithcart, 145 Iowa 549, 124 N.W. 305, 306–07 (Iowa 1910) (recognizing that all causes of action are assignable). Some states also differentiate between claims for personal injury and the proceeds from those claims, prohibiting the assignment of the cause of action but permitting the assignment of the proceeds. See, e.g., Charlotte–Mecklenburg Hosp. Auth. v. First of Ga. Ins. Co., 340 N.C. 88, 455 S.E.2d 655, 657 (1995).

28. 42 U.S.C. § 1395dd (2006).

29. Notwithstanding Mat–Su's contention that the assignment only gave it the right to recover the value of its services, the consent form Mat–Su obtained from Burkhead provided for the assign-

Any benefits potentially derived by expanding the remedies available to mandatory providers of emergency services would seem to be outweighed by the risk that the routine collection of such assignments from emergency room patients would increase the potential for duress and decrease the likelihood of a fully informed assignment.

The New Mexico Court of Appeals recently confronted the public policy implications of the assignment of personal injury claims to health care providers in *Quality Chiropractic, PC v. Farmers Insurance Co. of Arizona*.[30] Because New Mexico law provided for the subrogation rights of insurers, the court had to examine the similarities and differences between health care providers and insurers. The court observed that, because insurers have a pre-existing duty to pay, they "bear the risk that the insured will be unable to obtain compensation from the tortfeasor."[31] As the court noted, if there is no recovery from the third-party tortfeasor after benefits have been paid, the insurer has no additional recourse to seek reimbursement for the benefits it paid to the insured.[32] In contrast, a health care provider is entitled to payment in full from the patient.[33] The court also noted that "allowing injured tort victims to assign the proceeds of their personal injury claims could add unnecessary complications to the settlement of relatively straightforward cases."[34] The court thus "[thought] it best to leave to the legislature the decision as to whether to recognize health care assignments."[35]

Given that our legislature has provided an effective, albeit limited, lien remedy, the social ramifications of allowing such assignments, and health care providers' continued ability to collect from their own patients as

creditors, we think it should be for the legislature to decide whether to recognize assignments of patients' personal injury claims.

Judge Kristiansen did not err in holding that Mat–Su's exclusive remedy against Voss was the statutory lien procedure set out in AS 34.35.475(b).

### 2. Whether it was error to deny Mat–Su's Rule 56(f) continuance motion, to dismiss Mat–Su's action without considering the assignment, or to not consider Mat–Su's motion for summary judgment

■ Mat–Su also argues that the superior court: (1) abused its discretion in denying Mat–Su's Alaska Civil Rule 56(f) continuance motion-, because such motions should be liberally granted; (2) erred in dismissing the contract action without considering the contract itself; (3) erred by not "reject[ing] the conversion" of the motion for summary judgment into a motion to dismiss; and (4) erred in refusing to consider Mat–Su's motion for summary judgment, especially after "order[ing] the deposition of . . . Burkhead to be taken."

■ None of these arguments is availing. Rule 56(f) permits a court to order a continuance if a party needs additional time to conduct discovery to oppose a summary judgment motion.[36] Such motions should be "freely granted" only if certain conditions are met.[37] For instance, the party seeking the continuance must adequately explain why he or she cannot produce facts necessary to oppose summary judgment within the origi-

---

ment of *"all* rights to or claims for payment against third parties." (Emphasis added.)

**30.** *Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 132 N.M. 518, 51 P.3d 1172 (App.2002).

**31.** *Id.* at 1179.

**32.** *Id.*

**33.** *Id.* at 1180.

**34.** *Id.*

**35.** *Id.* at 1181.

**36.** Alaska Civil Rule 56(f) provides that:
Should it appear from the affidavits of a party opposing [a summary judgment motion] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**37.** *Kessey v. Frontier Lodge, Inc.*, 42 P.3d 1060, 1062–63 (Alaska 2002) (internal citations omitted).

nal time frame.[38] Mat–Su did not adequately explain what facts would be necessary to oppose Voss's motion. It also failed to explain why it could not produce any such facts within the original time frame. And Mat–Su also conceded that it did not need additional discovery to respond to Voss's motion.[39]

The superior court did not abuse its discretion in declining to consider the terms of any assignment, Mat–Su's own mooted motion for summary judgment, and a deposition the court permitted[40] after it concluded that there was a controlling legal principle that rendered any possible factual disputes immaterial. And it did not err in granting summary judgment after reaching that conclusion.

### B. Whether It Was Error To Deny Mat–Su's Motion for Mandatory and Permissive Intervention

Mat–Su argues that Judge White erred in denying its motion to intervene under Civil Rule 24(a) and Civil Rule 24(b). Mat–Su has relied on its status as an assignee, not its status as a lienor, as the "sole legal basis" for intervention.

#### 1. Whether it was error to deny Mat–Su's motion for mandatory intervention under Civil Rule 24(a)

■ Mat–Su argues that it was entitled to intervene as a matter of right under Rule 24(a),[41] and that the court therefore erred in denying Mat–Su's motion. Mat–Su contends that it obtained by contract a right to participate in Burkhead's suit and satisfied the technical requirements for mandatory intervention.

■ A movant is entitled to intervene as a matter of right if: (1) the motion is timely; (2) the applicant shows an interest in the subject matter of the action; (3) the applicant shows that this interest may be impaired as a consequence of the action; and (4) the applicant shows that the interest is not adequately represented by an existing party.[42]

Mat–Su had no independent cause of action against Voss, as we held above. It also sought to intervene only as an assignee. It did not seek to intervene as a lienor, did not invoke the lien statute, and made no showing that a claim under that statute was ripe.[43] Mat–Su therefore had no "legally cognizable interest for the purposes of intervention,"[44] and therefore did not satisfy the second requirement for intervention as of right. This makes it unnecessary for us to consider in detail the other requirements for mandatory intervention. We note, however, that Mat–Su has advanced no plausible reason to think either that Burkhead's attorneys could not adequately represent any interest of Mat–Su's relevant to tort issues of liability and damages or that there was any danger Mat–

---

**38.** *Id.* at 1063.

**39.** Mat–Su told the superior court at a May 20, 2008 hearing that it did not "need further discovery per se to respond to [Voss's] exclusive remedy argument." Mat–Su reaffirmed this position at the hearing on Voss's summary judgment motion, when it told Judge White that "we agree that the record is complete on this motion, and you can rule up or down or rule however you wish."

**40.** Mat–Su asserts that the superior court "ordered" Burkhead's deposition. More accurately, the court "permitted" the deposition. Judge Kristiansen only "reluctantly" allowed Mat–Su to depose Burkhead, and explained that she failed to see the relevance of a deposition to Voss's motion for summary judgment on the exclusive remedy issue. In any event, nothing revealed at that deposition created a genuine fact dispute material to the legal issues before us.

**41.** Alaska Civil Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

**42.** *Alaskans for a Common Language, Inc. v. Kritz,* 3 P.3d 906, 911 (Alaska 2000).

**43.** A third-party tortfeasor is only liable under the lien statute to a hospital "for 180 days *after* the date of a payment to the injured person." AS 34.35.475(a) (emphasis added).

**44.** *See Anchorage Baptist Temple v. Coonrod,* 166 P.3d 29, 33–34 (Alaska 2007).

Su's interests would be prejudiced by its nonparticipation.

Judge White did not err in denying Mat–Su's motion for intervention under Civil Rule 24(a).

### 2. Whether it was error to deny Mat–Su's motion for permissive intervention under Civil Rule 24(b)

 Mat–Su also argues that the superior court erred in denying its motion for permissive intervention under Rule 24(b). Mat–Su contends that the superior court incorrectly "mutated" permissive intervention into stipulated intervention when it considered Burkhead's arguments challenging the validity of the assignment. It also contends that the court should have permitted it to intervene because the parties did not assert that Mat–Su's intervention would cause delay or prejudice.

 A court may permit intervention under Rule 24(b)[45] "upon timely application when the applicant's claim or defense and the main action have a common question of law or fact."[46] A court must "also determine whether intervention would impair the rights of the original parties by causing undue delay or prejudice."[47] But in cases in which the prospective intervenor raises no new issues, we have established that "the most effective and expeditious way to participate is by a brief of amicus curiae and not by intervention."[48]

There is no basis for thinking that the superior court abused its discretion in denying Mat–Su's motion for permissive intervention. The superior court appropriately discussed the relevant considerations in deciding the issue. In any event, Mat–Su's exclusive remedy against Voss was provided by the lien statute, and Mat–Su did not demonstrate that its lien rights had been violated or that there was any incipient danger they would be violated. Mat–Su's intervention was unlikely to have raised new issues pertinent to Burkhead's tort claims against Voss, and Judge White did not abuse her discretion in denying Mat–Su's motion for permissive intervention.

## V. CONCLUSION

For these reasons we AFFIRM Judge Kristiansen's judgment dismissing Mat–Su's direct claim against Voss and Judge White's order denying Mat–Su's motion to intervene in Burkhead's tort suit against Voss.

---

**45.** Alaska Civil Rule 24(b) provides:

> Upon timely application anyone may be permitted to intervene in an action when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to inter-

vene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**46.** *Alaskans for a Common Language,* 3 P.3d at 916.

**47.** *Id.*

**48.** *State v. Weidner,* 684 P.2d 103, 114 (Alaska 1984).